NUMBER 13-05-007-CR

 

                         COURT OF APPEALS

 

               THIRTEENTH DISTRICT OF TEXAS

 

                  CORPUS CHRISTI - EDINBURG

 

 

 

ARON GARZA VEGA,                                                Appellant,

 

                                           v.

 

THE
STATE OF TEXAS,                                              Appellee.

 

 

 

                  On appeal from the 92nd
 District Court

                           of Hidalgo
County, Texas.

 

 

 

                              O P I N I O N

 

                     Before Justices Hinojosa, Yañez, and
Castillo

                                  Opinion by Justice Castillo

 








By a two-count
indictment, the State of Texas charged Aaron Vega with capital murder in the
shooting death of Ricardo Cantu[1]
and aggravated robbery[2].  A jury convicted Vega on both counts.  He received the mandatory life sentence for
capital murder.  The jury assessed a
thirty-year sentence for the aggravated robbery count.  By three issues, Vega contends:  (1) the evidence is legally and factually
insufficient; (2) double jeopardy bars the aggravated robbery count; and (3)
counsel was ineffective.  We reverse and
remand.  

I. RELEVANT FACTS








On August 11, 2002,
Ricardo Cantu was found shot to death in his vehicle in a residential
area.  He sustained three fatal bullet
wounds.  Spent rounds were found in and
near the vehicle.  Earlier that day,
Cantu spoke with his neighbor, Samuel Lopez. 
Lopez testified that Cantu asked him if he knew where Cantu could buy
thirty pounds of marijuana.  Lopez told
him he would see if he "could get them for him."   Lopez admitted he did not know where to buy
marijuana.  Lopez told Salvador Salas of
Cantu's request.  The two went to Vega's
house in a vehicle with Jesus Cindo, Jr. 
Cindo and Lopez testified that, while outside Vega's house, they heard
Vega say that he wanted to rob Cantu, a "buyer and distributor of
marijuana."  Present during Vega's
conversation with Salas was Emmanuel De Leon. 
De Leon testified that, earlier that day, Vega told him about "a
robbery that they were going to do" involving a "guy that had a lot
of weed."  Vega asked De Leon if he
wanted to go and De Leon agreed.  De Leon
testified that Vega told him he would "get $10 B to
$15,000."  De Leon further testified
that Vega said some men from Mexico would be arriving "and plan everything
to steal the weed from the guy. . . .  He
just told me they were professionals in these things."  

Testimony conflicts as
to how many men from Mexico actually arrived at Vega's house.  Two arrived in a red truck.  One arrived in a small black car.  The men retrieved guns from the trunk of the
car.  De Leon testified that Vega, Salas,
and the men from Mexico finalized the plan. 
"They were going to rob this man. 
They were going to rob some weed from him."  The men were to pretend to buy marijuana and
then steal it.  When the men finished
planning, "Sal and the other guys from Mexico went to rob the guy."  The men were armed.  Vega, De Leon, and Lopez stayed behind.  

The victim's wife,
Maria Elena Garza, testified that at about 7:00 p.m. that day Cantu went
outside the home.  A black car
arrived.  Cantu approached the vehicle to
talk to the occupants.  Because the car
had dark tinted windows, Garza did not see how many persons were in the car.  Approximately twenty minutes later, Cantu
entered the house.  She asked him who was
in the car, and he answered "two people he knew."  Garza testified Cantu left to buy bread.  About twenty minutes later, she heard
gunshots.  








A neighbor, Steve
Sandoval, testified that while driving home from work, he saw Cantu
"getting ready to leave." 
Sandoval observed a small foreign car outside Cantu's residence with
four people inside.  A "young kid
wearing a baseball cap," described as in his late teens or early twenties,
exited the back seat of the car.  About
thirty minutes later, Sandoval heard what appeared to be six or seven
gunshots.  

De Leon testified that
the men returned approximately fifteen minutes after leaving Vega's house.  They talked to Vega and left.  Each man had a gun.  Vega told De Leon that "the man"
was killed.  Salas, Vega, and De Leon
drove by the shooting scene.  De Leon
testified that Salas recounted the shooting:

Sal said that when
they got there, the man they were going to rob, he was sitting outside the gate
in his car and everybody got there and they just pointed the guns at him.  And then the man saidBthat's what I heard
that they said, that the man said that he wasn't scared, that he was going to
give them nothing, that he just tried to drive off, and that everybody started
shooting.  And then Sal said that he saw
the action and he started shooting, too. 

 

Vega  took the guns to his girlfriend's house
"to hide them there so that nobody could find them."  Vega's girlfriend, Sara Linan, recanted her
written statement to police.  She
admitted she told police she heard Vega tell Salas that "they were just
supposed to scare the guy, not kill him." 
She denied telling police that Vega returned the guns to the men from
Mexico and that they would probably use them again.  The guns were never recovered.  

A few days after the
shooting, Lopez spoke with Vega.  Lopez
testified as follows:








Q:  [W]hen you went to pick up [Vega] at his
girlfriend Sara's house, what did you-all talk about?

 

A:  I just asked him who had shot him.

 

Q:  And what did he tell you?

 

A:  That those guys were professionals, that
that's what they did for a living.

 

Q:  What guys.

 

A:  The [ones from Mexico].   

 

The medical examiner
testified that Cantu's death was caused by three gunshot wounds to his body. 

II.  SUFFICIENCY OF THE EVIDENCE

By his first issue,
Vega asserts that the State's evidence as to his culpability as a party is
legally and factually insufficient to sustain the conviction.  The State responds that the evidence is
sufficient.

A.  Legal Sufficiency Standard of Review








When evaluating the
legal sufficiency of the evidence, we view the evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Sorto
v. State, 173 S.W.3d 469, 472 (Tex. Crim. App. 2005) (citing Jackson v.
Virginia, 443 U.S. 307, 319 (1979)); Escamilla v. State, 143 S.W.3d
814, 817 (Tex. Crim. App. 2004).  This
standard is meant to give "full play to the [jury's] responsibility
fairly" to "draw reasonable inferences from basic facts to ultimate
facts."  Sanders v. State,
119 S.W.3d 818, 820 (Tex. Crim. App. 2003). 
We consider all the evidence that sustains the conviction, whether
properly or improperly admitted.  Conner
v. State, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001) (citing Garcia v.
State, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994) (per
curiam)).  

The legal sufficiency
of the evidence is measured against the elements of the offense as defined by a
hypothetically correct jury charge for the case.  Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997); Swartz v. State, 61 S.W.3d 781, 786 (Tex. App.BCorpus Christi 2001,
pet. ref'd).  This standard of legal
sufficiency ensures that a judgment of acquittal is reserved for those
situations in which there is an actual failure in the State's proof of the
crime rather than a mere error in the jury charge submitted.  Id. 
We then determine if any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson, 443 U.S. at 319.   

If we reverse a
criminal case for legal insufficiency, we reform the judgment of conviction to
reflect conviction for a lesser offense only if a jury charge on the lesser
offense was either submitted or requested but denied.  Collier v. State, 999 S.W.2d 779, 782
(Tex. Crim. App. 1999).  Otherwise, we vacate
the judgment of conviction for legal insufficiency and order a judgment of
acquittal.  Swearingen v. State,
101 S.W.3d 89, 97 (Tex. Crim. App. 2003)
(en banc).    

B.  Factual Sufficiency








In a factual
sufficiency review, we view all the evidence in a neutral light, both for and
against the finding, and set aside the verdict if "proof of guilt is so
obviously weak as to undermine confidence in the jury's determination, or the
proof of guilt, although adequate if taken alone, is greatly outweighed by
contrary proof." Vodochodsky v. State, 158 S.W.3d 502, 510 (Tex.
Crim. App. 2005) (citing Johnson v. State, 23 S.W.3d 1, 11(Tex. Crim.
App. 2000); Zuliani v. State, 97 S.W.3d 589, 593‑94 (Tex. Crim.
App. 2003)).  In determining the factual
sufficiency of the elements of the offense, we view all the evidence neutrally,
not through the prism of "the light most favorable to the
prosecution."  Johnson, 23
S.W.3d at 6‑7 (citing Clewis v. State, 922 S.W.2d 126, 129 (Tex.
Crim. App. 1996)).  In conducting such a
review, we consider all of the evidence weighed by the jury, comparing the
evidence which tends to prove the existence of the elemental fact in dispute to
the evidence which tends to disprove it. 
Id.  We are authorized to
disagree with the jury's determination even if probative evidence exists which
supports the verdict, but we must avoid substituting our judgment for that of
the fact‑finder.  Id. at 8
(citing Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App.
1997)).  

This Court measures
the factual sufficiency of the evidence against a hypothetically correct jury
charge.  Adi v. State, 94 S.W.3d
124, 131 (Tex. App.BCorpus Christi 2002,
pet. ref'd).  If we reverse a criminal
case for factual insufficiency, we vacate the judgment of conviction.  Clewis, 922 S.W.2d at 133‑34.  We remand for a new trial a criminal case
reversed for factual insufficiency so a second jury has the chance to evaluate
the evidence.  Swearingen, 101
S.W.3d at 97. 








C.  The Elements of Capital Murder








In determining whether
an accused participated as a party in an offense, a fact finder may examine the
events occurring before, during, and after the commission of the offense and
rely on actions of the accused that show an understanding and common design to
commit the offense.  Hanson v. State,
55 S.W.3d 681, 690 (Tex. App.BAustin 2001, pet.
ref'd).  Thus, conviction was authorized
under the evidence in this case if a rational jury could find that Vega
intentionally caused Cantu's death, either as a principal or as a party.  See Tex.
Pen. Code Ann. '19.03(a)(2) (Vernon
Supp. 2005); see also Hanson, 55 S.W.3d at 690.  A hypothetically correct jury charge would
instruct the jury to convict Vega if he (1) intentionally (2) committed murder
(3) in the course of committing or attempting to commit robbery (4) either as a
party or a principal.[3]  Tex.
Pen. Code Ann. _19.03(a)(2) (Vernon Supp. 2005).  A person commits robbery if, among others, in
the course of committing theft and with intent to obtain or maintain control of
property, he intentionally, knowingly, or recklessly causes bodily injury to
another.  Tex. Pen. Code Ann. _29.02(a) (Vernon
2003).  A person is criminally
responsible for an offense committed by the conduct of another if, among
others, he, acting with intent to promote or assist the commission of the
offense, solicits, encourages, directs, aids, or attempts to aid the other
person to commit the offense.  Tex. Pen. Code Ann. _7.02(a)(2) (Vernon
2003).  An act is committed intentionally
when it is the actor's conscious objective or desire to engage in the conduct
which causes the result.  Tex. Pen. Code Ann. ' 6.03(a) (Vernon
2003). A person acts knowingly when he knows that the conduct is reasonably
certain to cause the result.  Tex. Pen. Code Ann. ' 6.03(b) (Vernon
2003). 

Intent may be inferred
from acts, words and conduct of the accused.  Hernandez v. State, 819 S.W.2d 806, 810
(Tex. Crim. App. 1991) (en banc); Mouton v. State, 923 S.W.2d 219, 223
(Tex. App.BHouston [14th Dist.]
1996, no pet.).  A culpable mental state
is almost always proven through circumstantial evidence.  Warren v. State, 797 S.W.2d 161, 164
(Tex. App.BHouston [14th Dist.]
1990, pet. ref'd).  Intent is a fact
question and may be inferred from circumstantial evidence.  See Salinas v. State, 163 S.W.3d 734,
739-40 (Tex. Crim. App. 2005); Guevara v. State, 152 S.W.3d 45, 50 (Tex.
Crim. App. 2004).  The jury must review
all the evidence and may reasonably conclude from the circumstantial evidence
that the requisite mental state existed. 
Mouton, 923 S.W.2d at 223.

D.  Discussion








Vega maintains the
evidence is legally and factually insufficient to prove he is  guilty on principal theory.  He reminds us that he was at his residence,
he was  not the shooter, he did not
communicate or assist the shooters at the scene, and, he stresses, he did not
possess nor did the State prove the requisite culpable mental state to kill
under section 7.02(a)(2) of the penal code.[4]  The State counters that physical presence is
not required for party liability, and the evidence proves Vega intended to
kill.  

The State prosecuted
under the law of parties and the jury was instructed on the law of
parties.  Vega put a plan in place to rob
Cantu of marijuana.  He was present when
the assailants met at his residence and armed themselves for purposes of
perpetrating a robbery against Cantu. 
Cantu was ultimately shot and killed. 
A jury may infer the intent to kill from the use of a deadly weapon.  See Jones v. State, 944 S.W.2d 642,
647 (Tex. Crim. App. 1996); Adanandus v. State, 866 S.W.2d 210, 215
(Tex. Crim. App. 1993) (holding that if a deadly weapon is used in a deadly
manner, the inference is almost conclusive that the defendant intended to
kill).  Thus, the jury could have
rationally inferred from the evidence that Vega intended to promote or assist
in the murder of Cantu when he did nothing to stop the assailants from arming
themselves, thereby rejecting the defense theory that he intended solely a
robbery.  After viewing the evidence in
the light most favorable to the prosecution, we conclude that a rational jury
could have found that Vega facilitated a plan by which he recruited the persons
involved and, consistent with the plan, the persons met, armed themselves, and
proceeded to rob the victim and, in the course of committing the robbery,
killed Cantu.  Accordingly, the jury
could have found that the State proved the essential elements of capital murder
beyond a reasonable doubt.  See Sorto,
173 S.W.3d at 475.  We overrule Vega's
legal sufficiency challenge.













On the other hand, all
of the evidence that could legally support a rational jury's conclusion that
Vega is guilty of capital murder is nevertheless so weak that our confidence in
the jury's verdict is undermined.  See
Vodochodsky, 158 S.W.3d at 510‑511.  The evidence militates against the conclusion
that Vega solicited, encouraged, directed, aided or attempted to aid the
assailants in killing Cantu.  The record
is devoid of information on the details of a murder plot, and there is no other
information in the record suggesting that Vega planned the murder with the
assailants. Although there was some evidence that the men from Mexico were
"professionals," Vega's plan as communicated to the State's witnesses
was to use them to rob Cantu of marijuana. 
The plan escalated to armed robbery when the assailants armed themselves
with the weapons found in the vehicle in which one man from Mexico arrived and
Vega did nothing.  While it is true that
Vega hid the weapons after the murder, this is insufficient to establish the
culpable mental state to commit murder in the course of committing
robbery.  Indeed, none of that evidence
necessarily suggests that Vega acted with intent to promote or assist the
assailants to kill Cantu.  None of Vega's
statements to the State's witnesses directly refer to killing Cantu.  Rather, one statement indicates that they
were to scare Cantu, not kill him.  The
evidence does not suggest that Vega may have known of a plan to kill
Cantu.  The evidence does not show that
Vega provided the weapons or the ammunition. 
There is no evidence that he actually did any affirmative act to assist
the assailants with a plan to kill Cantu. Instead, the evidence shows that,
Salas, one of the assailants, began shooting when another assailant fired his
weapon.  

The State had the
burden to adduce evidence to prove Vega acted as a party or as a principal in
Cantu's murder in the course of committing robbery.  The evidence establishes that Vega acted as a
party to the aggravated robbery but not the murder. Vega did nothing to aid,
assist, encourage, solicit, direct or attempt to aid the shooters.  Culpability as a party under section
7.02(a)(2) of the penal code is factually 
insufficient.[5]  Accordingly, we conclude that proof of Vega's
culpability was so weak as to undermine confidence in the jury's
determination.  The evidence was
factually insufficient to convict.  We
sustain the sub-issue in Vega's first issue challenging the factual sufficiency
of the evidence.  We vacate the judgment
as to the capital murder count and remand this case for Vega to answer the
charges in the indictment.  See  Clewis, 922 S.W.2d at 133‑34;
Swearingen, 101 S.W.3d at 107. 








The State concedes
that, based on the evidence and the language of the indictment in this case,
the aggravated robbery offense is a lesser included offense of the capital
murder offense.  The State further
concedes that Vega's conviction for both offenses is barred by the doctrine of
double jeopardy if the capital murder conviction stands.  Because we remand for a new trial a criminal
case, reversed for factual insufficiency, the State is authorized to elect to
proceed on its capital murder charge in the indictment, the more serious
charge.  Because we reverse for factual
insufficiency, we vacate the judgment of conviction.  Clewis, 922 S.W.2d at133‑34.  We remand for a new trial so that a second
jury may have the chance to evaluate the evidence.  Swearingen, 101 S.W.3d at 97.  Thus, because we reverse and remand, we will
not render judgment on the lesser included offense of aggravated robbery.  See
Tex. R. App. P. 43.2(c), (d).    

III.  CONCLUSION

While the evidence,
viewed in the light most favorable to the verdict and indulging all inferences
in the State's favor, may be sufficient to withstand a challenge to its legal
sufficiency, it does not survive the challenge to its factual sufficiency. Because
the evidence is factually insufficient to sustain the conviction, we reverse
and remand.  See Clewis, 922
S.W.2d at 133‑34; Swearingen, 101 S.W.3d at 107.  Because of our disposition, we do not reach
Vega's remaining issues.  Tex. R. App. P. 47.1.                                                 

ERRLINDA CASTILLO

Justice

 

Publish.

Tex. R. App. P. 47.2(b).

 

Dissenting Opinion 

by Justice Federico Hinojosa

 

Dissenting Opinion on Designation

by Justice Errlinda Castillo

 

Opinion delivered and filed

this 27th 
day of July, 2006.

 

 











[1] See Tex. Pen.
Code Ann. _19.03(a)(2) (Vernon Supp. 2005) (stating that a
person commits capital murder if he intentionally commits murder under section
19.02(b)(1) of the penal code in the course of committing or attempting to
commit robbery).  In Count 1, the
indictment alleged that, on or about August 11, 2002, Vega intentionally caused
the death of Ricardo Cantu by shooting him with a firearm while in the course
of committing or attempting to commit robbery.





[2] See Tex. Pen. Code Ann _29.03 (Vernon 2003) (stating that a
person commits an offense if he causes serious bodily injury to another or uses
or exhibits a deadly weapon in the course of committing robbery).  In Count 2, the indictment alleged that, on
or about August 11, 2002, while in the course of committing theft of property
and with the intent to obtain or maintain control of property, Vega
intentionally and knowingly caused serious bodily injury to Ricardo Cantu by
shooting him with a firearm.

 





[3] The law of parties need not be
pled in the indictment.  Sorto v.
State, 173 S.W.3d 469, 476 n.23 (Tex. Crim. App. 2005) (citing Marable
v. State, 85 S.W.3d 287, 287 (Tex. Crim. App. 2002)); Malik v. State,
953 S.W.2d 234, 239 (Tex. Crim. App. 1997). 
In its brief, the State appears to acknowledge a "general
application" of the law of parties in the court's charge and notes that
Vega did not request a more specific application of the law of parties at
trial.   





[4] Tex.
Pen. Code Ann. ' 7.02(a)(2) (Vernon 2003). 





[5] Tex. Pen.
Code Ann. ' 7.02(a)(2).