**La Wonda Jean WARREN, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. A14–89–988–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 30, 1990.

Discretionary Review Refused Nov. 21, 1990.

Brian W. Wice, Houston, for appellant.

Carol M. Cameron, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and JUNELL and MURPHY, JJ.

## OPINION

JUNELL, Justice.

The trial court found appellant guilty of murder and assessed punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for five years. Appellant brings a single point of error alleging insufficient evidence to support the conviction.

We affirm.

Appellant was convicted of the murder of her child which drowned in a toilet at birth. The indictment sets forth the offense as follows:

> [Appellant] ... on or about September 12, 1985, did then and there unlawfully, while the mother of a newborn minor child, who was known as Baby Girl Warren and whose name was otherwise unknown to the Grand Jury, but who is hereafter styled the Complainant, and while having a statutory duty to act by providing care, protection and medical care for the Complainant, did *intentionally* and *knowingly* fail to provide care, protection, and medical care for the Complainant by *intentionally* and *knowingly* failing to remove the Complainant from a toilet bowl which contained water, thereby causing the death of the Complainant by asphyxia due to drowning.[1]

[Emphasis added by us.]

Firemen and police were summoned to appellant's apartment around noon one day where they found her wrapped in a blanket sitting in the living room. A dead baby,

---

1. The indictment also alleges a prior conviction in 1979 for felony possession of a controlled substance.

the complainant, was found in the bathroom toilet. Appellant was taken to a hospital for postpartum treatment and then to the police station where she made a written statement. Appellant was 28 years old. She lived alone. She had another child, age 12, living with its father's mother. Appellant was not married to the father of complainant. She was alone in her apartment the morning of the offense. She had two normal bowel movements and then had a call of nature to what she thought was a third bowel movement. Her water broke and she screamed for help. The baby came out into the toilet, crying once. Appellant continued to sit on the toilet. About five minutes later the placenta came out. Appellant cut the umbilical cord with a BIC razor blade. She said she didn't try to get the baby out of the toilet because she was afraid. Appellant went to the door and called out to a neighbor who summoned an ambulance.

The medical examiner's report shows the full-term baby died of drowning and that it had a trace of Valium in its liver. The baby was 20 inches long from crown to heel and weighed 3200 grams (approximately 7 lbs.). The placenta weighed 625 grams (approximately 1.4 lbs.).

At trial, testimony was adduced from the following:

*For the State:*

Clifford Reed [*]—captain, Houston Fire Department.

Gilbert Bennett [*]—paramedic, Houston Fire Department.

Thomas Hanslik [*]—officer, Houston Police Department.

R.W. Holland [*]—lieutenant, Houston Police Department.

*For the Defense*

LaWonda Warren—appellant.

Windel L. Dickerson—psychologist.

Lucinda Scott—appellant's common-law mother-in-law.

William Tucker—appellant's business landlord.

Ferdinand Plavidal, M.D.—general practitioner and obstetrician.

*State's Rebuttal Witnesses*

Cindy Holland Parker, R.N. [*]—emergency room nurse, St. Joseph's Hospital.

Jerome Banks Brown—clinical psychologist, Harris County Forensic Psychiatric Unit.

[*] Only these witnesses observed appellant within a proximity of up to five hours after the charged offense occurred.

The collective effect of the testimony is that there is some evidence to support the guilty finding of the court. Appellant asks us to consider that there is also evidence to support a hypothesis that appellant did not have the culpable mental state to constitute intent and knowledge under TEX.PENAL CODE ANN. § 6.03(a) and (b).

Appellant's testimony tracked her written statement [2], although she had poor recollection of some of the events and time intervals. She had no clock or watch in the apartment. She said she was surprised by the unexpected delivery of the child. She screamed when her water broke. She was handicapped in getting off the toilet because of the weight of the baby hanging on the umbilical cord. She was frightened by the sight of the placenta [3] (which was delivered after she cut the cord) and by her bleeding.

On the other hand, cross-examination of appellant resulted in her admitting that nothing physically prevented her from reaching down into the toilet and getting the baby out. The paramedic, fireman, police officer and the registered nurse all testified that appellant was uncommunicative and seemed unconcerned, unmoved, and unemotional about the death of her child.

There is still other evidence that appellant could have been afraid and unable to act on behalf of the drowning child, that her cutting of the umbilical cord was mere-

2. She also testified that she had taken a 10 milligram Valium for sleep the night before the delivery took place. She denied any other drug use. She added that her other child was delivered under a general anesthesia when she was 15.

3. One witness, the registered nurse, said she "passed out" the first time she saw a placenta.

ly a natural and instinctual act, and that appellant's display of a lack of concern and emotion shortly after the event would be consistent with the shock and/or trauma of a sudden childbirth and a state of "dissociation"[4]. Appellant contends these factors raise strong doubt about any *mens rea* for murder or the willful neglect of a duty owed by appellant to her child, tending to negate the elements of guilt the State must prove.

In reviewing the sufficiency of the evidence to support a conviction we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560; *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Crim.App.1989) (reconfirming the *Jackson* standard of review). This standard is applied to both direct and circumstantial evidence cases. *Chambers v. State,* 711 S.W.2d 240, 245 (Tex.Crim.App.1986). It is not required that every fact point directly and independently to the guilt of the accused. The cumulative force of all the incriminating circumstances may be sufficient to support a guilty verdict. *Harris v. State,* 738 S.W.2d 207, 220 (Tex.Crim.App.1986) (op. on reh'g), *cert. denied,* 484 U.S. 872, 108 S.Ct. 207, 98 L.Ed.2d 159 (1987); *see Ruben v. State,* 645 S.W.2d 794, 796 (Tex.Crim. App.1983); *Gonzales v. State,* 681 S.W.2d 270, 273 (Tex.App.—San Antonio 1984, no pet.).

Appellant directs us to the principle that "[a] conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of guilt of the defendant." *Humason v. State,* 728 S.W.2d 363, 366 (Tex.Crim.App.1987). (quoting *Moore v. State,* 640 S.W.2d 300, 302 (Tex.Crim.App.1982)). Proof which amounts only to a strong suspicion or mere probability is insufficient to support a con-

viction. *Id. See also Williams v. State,* 784 S.W.2d 428, 430 (Tex.Crim.App.1990) (a case showing the proper standard of review requires exclusion of only all other *reasonable* hypotheses, not necessarily *all* hypotheses).

Cases requiring exclusion of all hypotheses other than guilt of the defendant involve affirmative defenses, not culpable state of mind. Proof of the culpable state of mind nearly always is proved by circumstantial evidence. In other words, the trier of fact is called upon to review all the evidence, and having done so may reasonably conclude from the circumstantial evidence that the requisite mental state existed. Were this not so, any time a defendant takes the stand and says "I didn't intend to act" (or *fail* to act), the State will be forced to bring direct evidence to the contrary. The State does not have that burden where there is an issue solely of *intent,* and an affirmative defense is not involved.

Here there is sufficient circumstantial evidence for a rational trier of fact to properly infer that appellant acted with a conscious objective desire to engage in her conduct or cause the result she did ("intent"), and was aware that her conduct was reasonably certain to cause the result it did ("knowledge"). TEX.PENAL CODE ANN. § 6.03. The court was not compelled to accept as true all the testimony of appellant. The trier of fact is the sole judge of the weight and credibility of the witnesses and may believe or disbelieve all or any part of any witness's testimony. *Williams v. State,* 692 S.W.2d 671, 676 (Tex.Crim. App.1984).

Appellant's point of error is overruled. The judgment of the trial court is affirmed.

---

**4.** There was also testimony that appellant's lack of emotion could be consistent with the effects of tranquilizing medication.