**Delvin Roshon MOUTON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–95–00795–CR.**

Court of Appeals of Texas, Houston (14 Dist.).

May 23, 1996.

---

Hattie Sewell Mason, Houston, for appellant.

Dan McCrory, Houston, for appellee.

Before LEE, HUDSON and O'NEILL, JJ.

## OPINION

O'NEILL, Justice.

Appellant, Delvin Roshon Mouton, was convicted of capital murder at a trial before a jury. The trial judge assessed punishment at confinement for life in the Texas Department of Criminal Justice, Institutional Division. Appellant brings two points of error contending that: (1) the trial court erred in not permitting an instruction on jury nullification to be included in the charge; and (2) the evidence was insufficient to support the verdict. We affirm.

### Background

On the morning of May 25, 1994, appellant, a fifteen year old ninth grade student, decided he needed a car. Appellant testified he needed the car because "it was the end of school and we get out early and I didn't feel like waiting on the bus to get there at 2:30, and we got out at 11:30, and I wanted a way

to get home early." Appellant decided that the best way to obtain a car was to steal one.

Appellant retrieved a .38 caliber pistol from the trunk of his stepfather's car. Appellant then got on his bicycle and rode around the neighborhood in search of a car to steal. The first car appellant targeted was a Mazda 626, parked in a driveway. Appellant approached the house with gun in hand and rang the doorbell. The woman who answered the door was appellant's former math teacher. Appellant decided not to take her car and threw his weapon in the bushes. He asked her a quick question and then departed. About two minutes after she closed the door, appellant retrieved the gun. The next car appellant saw was a Nissan Maxima, also parked in a driveway. Appellant went to the door and a large man answered. Appellant became frightened, asked the man a question, and left. Appellant rode around on his bicycle for another five to ten minutes, then spotted a Lexus.

Appellant walked up to the house where the Lexus was parked and rang the doorbell. Complainant, Canh Pham, who was 78 years old, answered the door. As she opened the door, appellant raised the gun, pushed the door open, and shot three times. His first shot hit the door. His next two shots hit the complainant in the chest and in the arm. Appellant walked to the back of the house where he saw a second woman, Houng Nguyen ("Nguyen"). Appellant asked Nguyen where the keys to the Lexus were, and then shot her three times. After Nguyen had been shot, appellant testified that "she pointed to the board where the keys were and said, just go, just go." Appellant grabbed the keys, went out the back door, and threw the gun into a neighbor's back yard. Appellant then recovered his bicycle, put it into the Lexus, and drove to school. Appellant took his final exams, and was arrested in the school parking lot when he came back to the vehicle.

### Point of Error Number One

■ In his first point of error, appellant contends the trial court erred in the guilt/innocence phase of trial by failing to include in the charge a requested instruction on jury nullification. The State responds that appellant was not entitled to an instruction on jury nullification. We agree.

Appellant submitted the following instruction to the court:

> If you determine that the defendant is guilty of capital murder according to the law, before reaching a verdict you may consider the circumstances of the case and the age and motives of the defendant. If you find the law, because of the automatic life sentence that would be assessed against the defendant by the court upon conviction for capital murder, to be unjust or wrongly applied to the defendant, you may vote according to conscience and find the defendant not guilty of capital murder, and go on to consider whether the defendant is guilty of murder or any other lesser included offense authorized for your consideration by these instructions.

Appellant argues that, because of his youth, the jury should have been informed "they could ignore the law if they wanted to and acquit appellant." It is undisputed that a jury has the power of nullification. Appellant claims that "[i]f the jury possesses the power to nullify, it is illogical that it is not so instructed." Appellant also asserts, citing no authority, that the court's failure to give a nullification instruction violated his Sixth Amendment rights.

Although jury nullification is a recognized aspect of our jury system, there is no constitutional implication that would require a trial judge to instruct the jury on nullification. While we have found no Texas cases discussing the issue, we note that the United States Supreme Court rejected appellant's argument over one hundred years ago in *Sparf v. United States*, 156 U.S. 51, 15 S.Ct. 273, 39 L.Ed. 343 (1895). In *Sparf,* the court stated that it is the job of the courts to instruct the jury on the law applicable to the case, and to inform the jury of their duty to apply the law to the facts as they find them. *Id.* An instruction that the jury may disregard the law would only cause confusion. *Id.* at 101, 15 S.Ct. at 293.

Indeed, if a jury may rightfully disregard the direction of the court in matter of law,

and determine for themselves what the law is in the particular case before them, it is difficult to perceive any legal ground upon which a verdict or conviction can be set aside by the court as being against law. ... Public and private safety alike would be in peril if the principle be established that juries in criminal cases may, of right, disregard the law as expounded to them by the court, and become a law unto themselves. Under such a system, the principle function of the judge would be to preside and keep order while jurymen, untrained in the law, would determine questions affecting life, liberty, or property according to such legal principles as, in their judgment, were applicable to the particular case being tried.

*Id.* The court further stated that, "although jurors may indeed have the power to ignore the law, their duty is to apply the law as interpreted by the court and they should be so instructed." *Id.* at 102, 15 S.Ct. at 293.

Federal courts faced with requests for jury nullification instructions have consistently followed the *Sparf* reasoning. *See, e.g., United States v. Powell,* 955 F.2d 1206, 1213 (9th Cir.1991); *United States v. Krzyske,* 836 F.2d 1013, 1021 (6th Cir.1988). "Although the jury stands as a bulwark against laws which it deems unjust or excessively harsh ... it is not the judge's place to advise the jury of the possible collateral effects of their decision, information that has nothing to do with the legal standards which they have sworn to apply." *United States v. Burkhart,* 501 F.2d 993, 997 (6th Cir.1974). The court in *Burkhart* noted that the law of jury nullification does not require or permit a judge to tell the jury that it has the right to ignore the law as charged; rather, it allows a defense attorney "some leeway in persuading the jury to acquit out of considerations of mercy or obedience to a higher law." *Id.* at 997, n. 3 (citations omitted). "The right of a jury, as a buffer between the accused and the state, to reach a verdict despite what may seem clear law must be kept distinct from the court's duty to uphold the law and to apply it impartially." *Krzyske,* 836 F.2d at 1021. Thus, while jury nullification may exist as a part of our justice system, it is not a legal standard and is not a constitutional right of the defendant. The court's duty is *to instruct the jury on the law,* and the trial court in the instant case complied with that duty. We find no error in the court's charge.

Point of error number one is overruled.

### Point of Error Number Two

■ In his second point of error, appellant argues the evidence was insufficient to sustain his conviction for capital murder because the State did not prove intent. Specifically, appellant contends he should have been convicted of felony murder because the State failed to show that appellant intended to cause the death of the complainant. Appellant testified at trial that the gun went off accidentally.

■ In reviewing the sufficiency of the evidence to support appellant's conviction, we must determine, after reviewing all of the evidence in a light most favorable to the verdict, whether any rational trier of fact could have found the essential elements of capital murder beyond a reasonable doubt.[1] *Saxton v. State,* 804 S.W.2d 910, 914 (Tex. Crim.App.1991) (citing *Jackson v. Virginia,* 443 U.S. 307, 318–319, 99 S.Ct. 2781, 2788–2789, 61 L.Ed.2d 560 (1979)). As a reviewing court, we may not weigh the evidence. *See Moreno v. State,* 755 S.W.2d 866, 867 (Tex. Crim.App.1988). Our duty is to determine whether the explicit and implicit findings of the trier of fact are rational by viewing all of the evidence in a light most favorable to the verdict. *Adelman v. State,* 828 S.W.2d 418, 421–422 (Tex.Crim.App.1992). In so doing, any inconsistencies are resolved in favor of the verdict. *Matson v. State,* 819 S.W.2d 839, 843 (Tex.Crim.App.1991).

---

1. We note that the Texas Court of Criminal Appeals recently held that the intermediary courts of appeals have the authority to review the factual sufficiency as well as the legal sufficiency of the evidence. *Clewis v. State,* 922 S.W.2d 126 (Tex.Crim.App.1996). However, appellant has not requested that we review the factual sufficiency of the evidence. Thus, we limit our review of the sufficiency of the evidence to the standards enunciated in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

▆ A person commits the offense of capital murder if he intentionally commits murder while in the course of committing a robbery. Tex.Penal Code Ann. § 19.03(2) (Vernon 1974). An accused's intent may be inferred from his acts, words, and conduct. *Henderson v. State,* 825 S.W.2d 746, 749 (Tex.App.—Houston [14th Dist.] 1992, pet. denied) (citing *Dues v. State,* 634 S.W.2d 304 (Tex.Crim.App.1982); *Beltran v. State,* 593 S.W.2d 688, 689 (Tex.Crim.App.1980)). Specific intent to kill may be inferred from use of a deadly weapon. *Henderson,* 825 S.W.2d at 749 (citing *Moreno v. State,* 755 S.W.2d at 868). A handgun is a deadly weapon *per se.* Tex.Penal Code Ann. § 1.07(a)(11)(A) (Vernon 1974). The use of a deadly weapon infers the specific intent to kill unless in the manner of its use it is reasonably apparent that death or serious bodily injury could not result. *Id.* (citing *Godsey v. State,* 719 S.W.2d 578, 581 (Tex.Crim.App.1986)). To determine culpability for an offense, the jury is entitled to consider events that occurred before, during, and after the commission of the offense. *Id.* (citing *Barron v. State,* 566 S.W.2d 929, 931 (Tex.Crim.App.1978)). A culpable mental state is almost always proven through circumstantial evidence. *Id.* (citing *Warren v. State,* 797 S.W.2d 161, 164 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd)). The jury must review all of the evidence and may reasonably conclude from the circumstantial evidence that the requisite mental state existed. *Id.*

The record reflects that appellant retrieved his stepfather's gun to aid him in stealing a vehicle. Appellant knew that the gun was loaded. If he actually intended to use the gun merely to scare his victim, as he testified, he could have removed the bullets. Because appellant failed to remove the bullets and used a gun he knew to be loaded, the jury could reasonably infer an intent to kill. *See Sadler v. State,* 728 S.W.2d 829, 832 (Tex.App.—Dallas 1987, no pet.). The State also produced evidence that the gun's trigger required eight pounds of pressure to pull, making it unlikely that the gun would go off accidentally. Appellant had the gun out when he entered the complainant's house. The complainant was shot twice at the front door. Appellant then went to the back of the house where he ran into Nguyen, who testified that appellant aimed the gun at her and shot her three times. Even after two purported accidental shootings, appellant retrieved the keys to the Lexus and went to school. Finally, appellant's written confession was presented to the jury, which states:

> As I walked toward the front door I pulled the pistol from my pants and put it by my side. I rang the doorbell and an elderly Asian woman opened the door. As she opened the door *I pushed my way inside and shot her down in her lower side.* I asked her if anybody else was home and she said something in another language. I then saw a second Asian female, about thirty something years old. She was standing in the kitchen near the back door and I asked her where the keys to the car was. She said that she didn't have any. I asked her again and she said the same thing, that they did not have any *so I then shot her in the upper right side.* After I shot her she then pointed to some keys that were hanging on the wall and I spotted the keys to the Lexus. I asked her if anyone else was in the house and she said, just go, just go, so I left.

(Emphasis added).

We find the evidence was sufficient to support the jury's finding that appellant acted with the requisite intent to commit the offense of murder in the course of a robbery. Although appellant testified he did not intend to shoot the victims, the credibility of appellant's testimony was solely within the province of the trier of fact, which was free to accept or reject appellant's testimony. *See Saxton,* 804 S.W.2d at 914.

Appellant's second point of error is overruled.

The judgment of the trial court is affirmed.