Affirmed and Memorandum Opinion filed July19, 2007








Affirmed and Memorandum Opinion filed July19, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00261-CR

____________

 

ANTHONY QUANG TRAN, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 177th
District Court

Harris County, Texas

Trial Court Cause No. 1029304

 



 

M E M O R A N D U M   O P I N I O N

A jury convicted appellant, Anthony Quang Tran, of theft
and the trial court sentenced him to twenty-five years= confinement in
the Institutional Division of the Texas Department of Criminal Justice.  In
four issues, appellant argues (1) the evidence is legally and factually
insufficient to support a conviction, and (2) he received ineffective
assistance of counsel.  We affirm.

 








I.  Factual and Procedural Background

On October 29, 2004, appellant, an engineer for a NASA
contractor, opened an account in his son=s name at the
Johnson Space Center (AJSC@) Credit Union. 
On the same day, he endorsed and deposited a check made payable to him from
Marc USA/Pittsburgh Inc. (AMarc USA@) in the amount of
$128,486.  In early November, appellant made four cash withdrawals totaling
$20,500.  On November 8, 2004, appellant executed wire transfers of $45,000 to
a bank in Japan and $30,000 to a bank in the Netherlands.  Appellant
subsequently made another cash withdrawal and another wire transfer to the
Netherlands.  On November 15, 2004, appellant endorsed and deposited a second
check from Marc USA in the amount of $193,758.  Appellant subsequently made
several cash withdrawals and wire transfers to the banks in Japan and the
Netherlands.  On December 3, 2004, appellant endorsed and deposited a third
check from Marc USA in the amount of $197,337.  Three days later he wire
transferred $20,000 to Barclays Bank in London.  He also withdrew cash and
wired $168,000 to the bank in Japan.

On December 17, 2004, appellant endorsed and deposited a
check from Sundance Square Management Corp. (ASundance Square@) for
$237,653.33.  On December 23, 2004, appellant withdrew $5000 in cash and wired
$10,000 to Barclays Bank in London.  After making this final wire transfer,
appellant began calling the JSC Credit Union and requesting that his wire
transfers be rescinded.  An employee of the credit union testified that during
this time period, appellant phoned her ten to twenty times per day requesting
that the bank reclaim the transferred funds.  On December 24, 2004, the
Sundance Square check was returned to the JSC Credit Union because the issuing
bank determined it was counterfeit.  Debra Reeder, vice-president of accounting
at the credit union then reviewed the first three large checks that appellant
had deposited and determined that they were also counterfeit.  Marc USA did not
issue the checks and did not consent to appellant negotiating or possessing the
checks.








Secret Service Agent Steve Dudek conducted an investigation
into the counterfeit checks.  Dudek interviewed appellant, and after waiving
his constitutional rights, appellant  made a statement to Dudek.  In his statement,
appellant claimed to have lost almost $200,000 as the victim of a ANigerian 419 scam@ during 2002 and
2003.[1] 
Appellant said he received an email in 2004 from someone who claimed he could
help appellant recoup his losses from the previous scam.  Several emails, many
from an alleged Nigerian official, Idiata Aigbedion, and an alleged attorney,
Francis Ehimen, ensued.  According to appellant, at the direction of Aigbedion
and Ehimen, he agreed to open a separate account at his credit union.[2]
Appellant indicated he only agreed to participate if he did not have to
contribute any of his own money.  Appellant admitted that he deposited the four
checks and made wire transfers to various banks around the world, something he
had agreed to do in exchange for a fee.  He also made several cash
withdrawals.  Appellant stated he did not know that the first three checks were
counterfeit until he was arrested.  When the fourth check did not clear,
appellant said, Athe bank caught it this time.@  According to
appellant, it was only then that he realized he Ahad made an honest
and stupid mistake.@








Appellant was charged by indictment with the felony offense
of aggregate theft, committed between October 29, 2004, and December 23, 2004. 
After entering a plea of not guilty, appellant was convicted by a jury of the
charged offense.  The trial court sentenced appellant to twenty-five years= confinement in
the Texas Department of Criminal Justice, Institutional Division.  This appeal
timely followed.

II.  Sufficiency of the Evidence

In his first two issues, appellant contends the evidence is
legally and factually insufficient to support a conviction for theft. 
Specifically, appellant argues that he was a victim of a second scam and that
he did not know the checks he was depositing were counterfeit.  Therefore, he
had no intent to commit theft.  

A.        The evidence is legally
sufficient to support appellant=s conviction.

When
reviewing the legal sufficiency of the evidence, we do not ask whether we believe
that the evidence at trial established guilt beyond a reasonable doubt. Jackson
v. Virginia, 443 U.S. 307, 318B19, 99 S.Ct. 2781, 2789 (1979).
Rather, we examine the evidence in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt.  Id. 443 U.S. at 319,
99 S.Ct. at 2789; Mason v. State, 905 S.W.2d 570, 574 (Tex. Crim. App.
1995) (en banc).  

A person commits theft if he unlawfully appropriates
property with intent to deprive the owner of it without the owner=s effective
consent.  Tex. Penal Code Ann. ' 31.03 (Vernon
Supp. 2006).  The jury charge in this case included an instruction on the law
of parties.  A person is criminally responsible as a party to an offense if the
offense is committed by the conduct of another if, acting with intent to
promote or assist the commission of the offense, he solicits, encourages,
directs, aids, or attempts to aid the other  person to commit the offense. Id.
' 7.02(a)(2).  








In this case, the jury was authorized to convict appellant
as a principle if it found that appellant, pursuant to one scheme and
continuing course of conduct, appropriated by acquiring and otherwise
exercising control over money owned by Debra Reeder and the JSC Credit Union,
with the intent to deprive the complainants of the property.  The jury was also
authorized to convict appellant as a party if it found beyond a reasonable
doubt that Idiata Aigbedion or Francis Ehimen unlawfully, pursuant to one
scheme and continuing course of conduct, appropriated by acquiring or otherwise
exercising control over money owned by Debra Reeder and the JSC Credit Union
with the intent to deprive the complainants of the property, and that
appellant, with the intent to promote or assist the commission of the offense,
solicited, encouraged, directed, aided or attempted to aid Idiata Aigbedion or
Francis Ehimen to commit the offense.

In reviewing the evidence to determine whether it is
sufficient to support appellant=s conviction as a principle or a party,
the crucial issue is intent.  Appellant admitted he deposited the checks and
that he withdrew cash and executed wire transfers from the account.  He argues
he had no intent to commit theft because he was a victim of a scam and did not
know the checks were counterfeit.  Proof of a mental state almost always depends upon
circumstantial evidence.  Varnes v. State, 63 S.W.3d 824, 833 (Tex. App.CHouston [14th Dist.] 2001, no pet.). 
To determine culpability for an offense, the jury is entitled to consider
events that occurred before, during, and after the commission of the offense.  Mouton
v. State, 923 S.w.2d 219, 223 (Tex. App.CHouston [14th Dist.] 2001, no pet.); see
also Godsey v. State, 719 S.W.2d 578, 581 (Tex. Crim. App. 1986) (en banc).

As part of the investigation, Secret Service agents
reviewed email correspondence and other documents found on the hard drive of
appellant=s home computer.  The record reflects that appellant
corresponded via email with Idiata Aigbedion and Francis Ehimen.  Over the
course of the email correspondence, appellant received wire transfer
instructions.  On October 8, 2004, prior to receiving the first check, appellant
sent an email to Ehimen stating, ALet=s hope this check
is for real.@  In a subsequent email correspondence with Aigbedion
appellant stated:








Regarding the Western Union, Since the Sept. 11, 2001 terrorist
attacked [sic] on the US Soil, the US Justice department had a new Law, the
Patriot Act, which was created by the US Congress, It has the legal right to
monitor all money transactions in and out of the country, especially from those
countries that are listed under Terrorist is [sic] watch.  Unfortunately,
Nigeria is on that list.

When they see a large sum of cash
send [sic] in to Nigeria with no clear business or personal reasons, they can
stop it from sending and give it back to the sender.  They are not confiscating
it, because they are suspicious of the transaction only, if they have
considered as some sort of illegal activity, then they will take away the money
and conducting a formal investigations, this is how my previous attorney and
his Aclowns@ were arrested, last time.

 

Based
on these emails, the jury could have inferred that appellant knew the checks
were counterfeit and thus that appellant was not the victim of a scam. 
Appellant expressed concern that the checks were not Areal@ and discussed
with Aigbedon how to avoid regulations intended to discover suspicious
transactions.

The record further reflects that appellant made
inconsistent statements to  credit union employees about the nature of the
account he opened in his son=s name.  He initially told the credit
union that the account was for his son=s college fund,
but when Reeder asked where the large checks originated, appellant told her he
was attempting to start a business in another country.  The email
correspondence also revealed that appellant conducted the transactions under
the guise of an international business.  Further, appellant=s actions prior to
the deposit of the last check indicated he was not an innocent victim of a
scam.  Appellant phoned the credit union ten to twenty times per day attempting
to reclaim the money from the wire transfers.  The jury could have inferred
from this evidence that appellant knew the checks were counterfeit and had
reason to believe that the credit union would discover the theft.[3]








Viewing the evidence in the light most favorable to the
verdict, we hold that a rational jury could have found the elements of the
offense of aggregate theft beyond a reasonable doubt.  We overrule appellant=s first issue.

B.      The
evidence is factually sufficient to support appellant=s conviction.

In his second issue, appellant contends the evidence is
factually insufficient to support his conviction.  When reviewing the factual
sufficiency of the evidence, we view all the evidence in a neutral light and
set aside the verdict Aonly if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.@  Cain v. State,
958 S.W.2d 404, 407 (Tex. Crim. App. 1997) (en banc) (quoting Clewis v.
State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996) (en banc)). Before we may
reverse for factual insufficiency, we must first be able to say, with some
objective basis in the record, that the great weight and preponderance of the
evidence contradicts the jury=s verdict.  Watson v. State, 204
S.W.3d 404, 417 (Tex. Crim. App. 2006).  In examining a factual sufficiency
challenge, we defer to the factfinder=s determination of
the credibility of the evidence.  Swearingen v. State, 101 S.W.3d 89, 97
(Tex. Crim. App. 2003) (en banc). 








Appellant argues that the documents found on his computer
support his contention that he was merely a victim of another Nigerian email
scam.  Specifically, he points to the email he sent stating, ALet=s hope this check
is for real,@ arguing this statement indicates  he did not know the
checks were counterfeit.  Appellant also highlights an email in which he told
Ehimen that he appreciates all of Ehimen=s help and hopes
his contract money will soon be released.  Appellant claims it is clear from
those emails that he thought his ANigerian deal was
going to go through@ and that he would soon receive funds from
Ehimen and Aigbedion.  But appellant also stated that he agreed to participate
with those who corresponded with him and that he did not care where the money
was coming from.  He said his only goal was to get some money.  Thus, although
the jury could have believed from the evidence that appellant was the victim of
a second scam, the jury also could have believed that appellant was working
with Ehimen and Aigbedion to pass counterfeit checks in an attempt to recoup
his lost funds from the first scam.  

Reviewing all of the evidence in a neutral light, we cannot
say that the verdict is so contrary to the overwhelming weight of the evidence
to be clearly wrong or unjust, nor can we say that the great weight and
preponderance of the evidence contradicts the verdict.  Therefore, we overrule
appellant=s second issue.

III.  Ineffective Assistance of Counsel

In his third and fourth issues, appellant contends he
received ineffective assistance of counsel at trial.  We review claims of
ineffective assistance of counsel under the standard set forth in Strickland
v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984).  Under the Strickland
test, an appellant must prove (1) his trial counsel=s representation
was deficient, and (2) the deficient performance was so serious that it
deprived the appellant of a fair trial.  Id. at 687, 104 S. Ct. at
2064.  To establish both prongs, the appellant must prove by a preponderance
of the evidence that counsel=s representation fell below the objective
standard of prevailing professional norms, and there is a reasonable
probability that, but for counsel=s deficiency, the
result of the proceeding would have been different.  Id. at  690B94, 104 S. Ct. at
2066B68.  An appellant=s failure to
satisfy one prong makes it unnecessary for a court to consider the other prong.  Id. at 697,
104 S. Ct. at 2069.  This test is applied to claims arising under the Texas
Constitution as well as those arising under the United States Constitution.  Hernandez
v. State, 726 S.W.2d 53, 56B57 (Tex. Crim. App. 1986) (en banc).








Our review of defense counsel=s performance is
highly deferential, beginning with the strong presumption that the attorney=s actions were
reasonably professional and were motivated by sound trial strategy.  Jackson
v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (en banc).  When the
record is silent as to trial counsel=s strategy, we
will not conclude that defense counsel=s assistance was
ineffective unless the challenged conduct was A>so outrageous that
no competent attorney would have engaged in it.=@ Goodspeed v.
State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting Garcia v.
State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)). 

A.      Trial
counsel=s use of documents
in evidence

In his third issue, appellant contends his trial counsel
failed to use documents that were in evidence to show that appellant was being
manipulated and duped by the perpetrators of the Nigerian 419 scam. 
Specifically, appellant refers to State=s exhibit 16-D,
which was a compilation of the documents printed from appellant=s computer.  Those
documents contained email correspondence to and from Ehimen and Aigbedion about
the checks to be deposited and the nature of the wire transactions.  As
discussed more fully above, the documents found on appellant=s computer were
not entirely exculpatory.  State=s exhibit 16-D was
admitted into evidence and certain email correspondence was read to the jury
from the exhibit.  Kevin Levy, the Secret Service agent who retrieved the
documents from appellant=s computer, read the email in which
appellant questioned the procedure for wiring money to Nigeria in view of the
regulations imposed as a result of the September 11, 2001 terrorist attacks. 
On cross-examination, appellant=s counsel requested that Levy read the
entire email, which supported appellant=s theory that he
thought he was engaged in a business transaction with Ehimen and Aigbedion.  








Counsel=s reasons for failing to highlight more of
the documents retrieved from appellant=s computer do not
appear in the record, and her conduct could have been part of a reasonable
trial strategy.  In addition, the record reflects that trial counsel vigorously
pursued a strategy of attempting to show that appellant was again being
victimized by the Nigerian scam.  The fact that other counsel might have
pursued a different strategy does not show ineffective representation.  Gholson
v. State, 5 S.W.3d 266, 273 (Tex. App.CHouston [14th
Dist.] 1999, pet. ref=d).  We overrule appellant=s third issue.

B.      Trial
counsel=s failure to
object

In his fourth issue, appellant argues his counsel rendered
ineffective assistance in failing to timely object to evidence of altered
driver=s licenses found
on appellant=s computer.  Appellant argues that if his trial
counsel had timely objected to the admission of the altered drivers= licenses, the
trial court would have excluded them as extraneous offenses.  To argue
successfully that his trial counsel=s alleged failure
to object amounted to ineffective assistance, appellant must show that the
trial court would have erred in overruling the attorney=s objection to the
testimony.  Vaughn v. State, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996)
(en banc) (per curiam).  

Here, while cross-examining Agent Dudek, appellant=s counsel asked, ADo you have any
personal knowledge of what was found on the computer?@  Dudek responded,
AWell, what I found
is that there was certain e-mail correspondences B excuse me, we
found paper material in the room, and we also found indications of driver=s licenses that
were altered.  We also found drivers= licenses that
contained other people=s photographs. . . .@ (emphasis
added).  On re-direct, the prosecutor approached the bench, and, outside the
presence of the jury, sought to introduce State=s Exhibit 16-C,
which consisted of the documents scanned from appellant=s computer.  The
prosecutor claimed appellant opened the door to the evidence including evidence
of the altered drivers= licenses.  At that time, appellant=s counsel objected
to the admission of the altered drivers= licenses because
they were evidence of an extraneous offense.  The trial court admitted the
evidence because appellant had Aopened the door@ on
cross-examination.








As is made clear by the record, appellant=s trial counsel
did not fail to timely object to the introduction of this evidence.  Instead,
her objection was overruled because the trial court concluded she had Aopened the door@ on
cross-examination.  Appellant presents no argument that his trial counsel was
ineffective by opening the door to such evidence.  Instead, appellant focuses
his argument on establishing that an objection to the altered driver=s licenses
themselves would have been sustained because these licenses were evidence of
extraneous offenses excluded by the Rules of Evidence.  But he does not
identify any basis upon which an objection to Dudek=s testimony that
opened the door to their introduction could have been made, nor does he explain
why any such objection to this testimony would have been sustained.  Under
these circumstances, appellant has not demonstrated ineffective assistance, and
his fourth issue is overruled.

Iv.  Conclusion

Having overruled each of appellant=s issues, the
judgment of the trial court is affirmed.

 

 

/s/      Eva M. Guzman

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed July 19, 2007.

Panel consists of
Justices Frost, Seymore, and Guzman.

Do Not Publish C Tex. R. App. P. 47.2(b).

 

 

 

 









[1]  The number 419 refers to the fraud section of the
Nigerian Penal Code.  The ANigerian 419
scam@ takes many forms, but the most prevalent scheme
occurs when an individual receives an email from someone claiming to be a
Nigerian official, businessperson, or surviving spouse of a former government
official.  This person claims to have a large sum of money he needs to move out
of Nigeria and to be looking for someone to help him/her do that for a
commission.  If the individual responds to the initial offer, he may receive
documents that appear Aofficial,@
and is typically asked to provide blank letterhead and bank account numbers as
well as funds to cover the transaction and attorney=s fees.  Invariably, problems arise and the Nigerian
official or businessperson needs more money.  By the time the target of the
scam realizes that he will never see any money, he usually has lost a
substantial amount of money.





[2]  Appellant stated he opened this account in his son=s name because the credit union would not permit him
to open more than one account in his own name and he did not want his wife to
learn of the additional account.





[3]  At the conclusion of his legal sufficiency
challenge, appellant contends that, even if there is sufficient evidence to
support the jury=s verdict as to the first check in the amount of
$128,486, there  is insufficient evidence to support a conviction for aggregate
theft over $200,000 because there  is  insufficient evidence of intent
regarding the other three checks.  But appellant=s intent to commit theft by depositing counterfeit checks is not
altered by the fact that the bank did not identify the first check as
counterfeit, as appellant claims.  Indeed, appellant stated in reference to the
fourth check,Athe bank caught it this time,@ a statement from which the jury could have inferred
that appellant was aware that the bank had not caught the counterfeit checks
the previous three times he deposited them into the account.