

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00368-CR

HAYWARD GEORGE SLATER, JR.          APPELLANT

V.

THE STATE OF TEXAS          STATE

----------

## FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

The State charged Appellant Hayward George Slater, Jr. with, and a jury found him guilty of, capital murder. Because the State did not seek the death penalty, Slater was sentenced to life imprisonment.[2] In five points, Slater seeks

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Code Crim. Proc. Ann. art. 37.071, § 1 (West Supp. 2012) ("If a defendant is found guilty in a capital felony case in which the state does not seek the death penalty, the judge shall sentence the defendant to life imprisonment without parole.").

to have his conviction overturned, claiming that the trial court erred by overruling his objection to an "acquittal first" jury charge; that the trial court erred by sustaining the State's objection to his closing arguments concerning the jury charge; that the trial court erred by overruling his objection to the State's alleged misstatement of the law during voir dire; that the evidence is legally insufficient to support the jury's finding that he possessed the specific-intent-to-kill element of capital murder; and that the automatic life sentence imposed by statute in capital murder cases when the State does not seek the death penalty is unconstitutional. We will affirm.

## II. BACKGROUND

Slater entered a Shell station located in Arlington, Texas, at roughly 10:00 p.m. on May 29, 2010. Slater asked the attendant, Prem Sharma, who was mopping the floor, to be allowed to purchase cigarettes. As Sharma stepped behind the counter, Slater lifted his shirt, exposing a .44 caliber pistol that was tucked in his waistband. As Sharma turned to Slater, Slater pulled the pistol from his waistband and pointed it at Sharma. While it is not known what Slater said to Sharma, it is not disputed that Slater intended to rob Sharma.

Sharma reacted by retrieving a "pricing gun" and pointing it at Slater. Slater continued to point the .44 at Sharma, and as Sharma backed away, Slater, who at this point was only feet from Sharma, shot him in the chest. Sharma quickly died from the gunshot wound. This encounter was captured on the Shell station's surveillance camera.

2

The next day, Arlington police ran a media release, offering a reward of $10,000 for information regarding the shooting. Multiple witnesses came forward, including Slater's sister, to identify Slater as the assailant. The police later arrested Slater. Slater confessed to shooting Sharma. During the investigation, Slater also confessed to his sister via a surreptitiously recorded phone conversation.

At trial, both of these recordings, as well as the video from the surveillance camera, were played for the jury. Slater did not dispute that he shot Sharma; rather, Slater's defense was that he never intended to shoot Sharma. Specifically, Slater's defense was that he lacked the "conscious objective and desire" to cause Sharma's death. The jury charge included the greater offense of capital murder, but it also included the lesser-included offenses of murder and aggravated robbery. The jury found Slater guilty of capital murder, and he was statutorily sentenced to life imprisonment without parole. This appeal followed.

### III. DISCUSSION

#### A.    The Jury Charge

Slater's first point complains that the jury charge misled the jury and required the jury to unanimously decide guilt or innocence as to the greater offense of capital murder before even considering whether he was guilty of any of the lesser offenses described in the charge. It appears that Slater's argument is that such a charge is inconsistent with the State's burden of proof beyond a reasonable doubt of every element of the crime. To buttress this argument,

3

Slater points to the court of criminal appeals's decision in *Barrios*, in which the court described an almost identical charge[3] as being "inartful" in its use of the phrase "will acquit" instead of, as the court described it, a "better practice" of the trial court's including an instruction that (1) explicitly informs the jury that it may read the charge as a whole and (2) to substitute "or if you are unable to agree,

---

[3]The jury charge in this case reads:

Unless you so find from the evidence beyond a reasonable doubt or if you have a reasonable doubt thereof, you will acquit the Defendant of the offense of capital murder, as charged in the indictment, and next consider whether he is guilty of the offense of murder.

. . .

Unless you so find from the evidence beyond a reasonable doubt or if you have a reasonable doubt thereof, you will acquit the Defendant of the offense of murder, and next consider whether he is guilty of the offense of aggravated robbery.

. . .

Unless you find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict "Not Guilty."

You are instructed that if you find from the evidence beyond a reasonable doubt that the defendant is guilty of either capital murder or guilty of murder or guilty of aggravated robbery, under the instructions given to you previously, but you have a reasonable doubt as to which of said offenses, if any, he is guilty, then you should resolve that doubt in favor of the defendant and find him guilty only of the offense of murder or aggravated robbery.

The charge goes on to read:

If you find from the evidence that the defendant is not guilty of capital murder or murder or aggravated robbery, or if you have a reasonable doubt as to whether the defendant is guilty of any of these offenses, you will find the defendant "Not Guilty."

4

you will next consider" for "you will acquit . . . and next consider." *Barrios v. State*, 283 S.W.3d 348, 353 (Tex. Crim. App. 2009). We conclude that based on *Barrios*, the trial court did not commit error in this case.

A claim of error in the jury charge is reviewed using the procedure set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984), o*verruled on other grounds by Rodriguez v. State*, 758 S.W.2d 787 (Tex. Crim. App. 1988); *Barrios*, 283 S.W.3d at 350. The first step is to determine whether there is error in the charge. *Barrios*, 283 S.W.3d at 350; *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If there was properly objected-to error, reversal is required if the error is calculated to injure the rights of the defendant, i.e., if there was some harm. *Barrios*, 283 S.W.3d at 350; *Almanza*, 686 S.W.2d at 171. If the error was not objected to, it must be fundamental and will require reversal only if it was so egregious and created such harm that the defendant did not have a fair and impartial trial. *Barrios*, 283 S.W.3d at 350; *Almanza*, 686 S.W.2d at 171. The degree of harm is determined in light of the entire jury charge, the state of the evidence (including the contested issues and the weight of the probative evidence), the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. *Almanza*, 686 S.W.2d at 171.

As Slater points out, the proper construction of the jury charge in this case is controlled by *Barrios*. 283 S.W.3d at 350. But contrary to how Slater would ask this court to hold, *Barrios* supports the conclusion that the trial court did not err in this case. Reaffirming and clarifying its prior holding in *Boyett v. State*, 692

5

S.W.2d 512 (Tex. Crim. App. 1985), the court of criminal appeals held in *Barrios* that the type of instruction at issue in this case is a proper sequencing instruction that requires of the jury unanimity at any stage prior to the verdict. *Barrios*, 283 S.W.3d at 352–53; *see Boyett*, 692 S.W.2d at 516.

In *Barrios*, the appellant argued (similar to what Slater seems to argue in this case) that a charge instructing the jury to "acquit" the defendant if it had a reasonable doubt that he was guilty of the greater offense before next considering the lesser offense was at odds with the charge's benefit-of-the-doubt instruction which requires the jury to look at the charge as a whole. 283 S.W.3d at 352. In other words, if the defendant is convicted of the greater offense, the inquiry ends. Likewise, if the jury "acquits" the defendant of the greater offense, then the jury has made a unanimous decision regarding that offense, and thus there is "nothing to compare the lesser-included offense to when subsequently considering the instruction on benefit of the doubt." *Id.* As the argument goes, the disposition of the greater offense has by that time already been decided by the jury, and the instruction on benefit of the doubt becomes superfluous and non-instructive as to the jury's role to look at the charge as a whole. *Id.*

Rejecting this argument, the court of criminal appeals stated that "Appellant's conclusion arises from a narrow interpretation of the charge. Unanimous verdicts are the final decisions of a jury, delivered to the court after its deliberations are complete." *Id.* Under the sequencing instruction, the order in which the parts of the jury charge are considered is left to the discretion of the

6

jury. *See id.* Such a jury instruction also adequately instructs jurors to consider the defendant's requested instructions on lesser included offenses. *Boyett*, 692 S.W.2d at 516. The trial judge reads the entire charge to the jury before it retires to deliberate. *Barrios*, 283 S.W.3d at 353. Thus, the jurors will have heard the instruction on the benefit of the doubt before considering the issue of guilt on any of the offenses included in the charge. *Id.* "Therefore, even if, and perhaps especially if, the jurors cannot agree as to guilt on the greater offense, they have already been instructed that they may consider guilt as to the lesser offense before deciding on a verdict as to the greater offense." *Id.*

The court did observe that the charge's "use of 'acquit' as it is understood in relation to delivery of a verdict is at odds with the context of the instruction" in relation to jury deliberations, in which "the intended meaning seems to be 'have a reasonable doubt of or cannot agree on guilt,'" and that the charge could be drafted more clearly. *Id.* at 353. The court held, however, that the charge, read as a whole, instructed the jury that at its discretion it might consider the lesser-included offenses before making a final decision as to the greater offense. *Id.* The court thus held that the charge allowed the jury to consider the entire charge as a whole and that the sequencing instruction did not require the jury to unanimously agree that a defendant was not guilty of the greater offense before it could consider a lesser-included offense. *Id.* The court held that the charge, therefore, was not erroneous. *Id.*

We conclude likewise, that the virtually identical instruction in this case was a sequencing instruction that did not instruct the jury that it must unanimously acquit Slater of the greater offense before proceeding to the lesser offenses, but instead required the jury to unanimously acquit him or convict him of one of the charged offenses only after the jury had considered whether he was "guilty of any of these offenses." Therefore, despite the charge's including "inartful" language, it was not erroneous, and the trial judge did not err by overruling Slater's objection to it. We overrule Slater's first point.

## B. State's Objection to Slater's Closing Argument

Slater argues in his second point that the trial court erred by sustaining the State's objection to his closing argument. During Slater's closing argument, the following exchange occurred:

> [Defense Counsel]: The law anticipates that you will consider this charge, this document that the Judge gives you that contains the law as a whole. Go back there and read it all thoroughly, understand it. And you've got basically three choices here. You've got capital murder, you've got murder, and you've got aggravated robbery to choose from, and it's anticipated and expected that you consider them however you want to.
>
> In other words, you don't have to consider whether Hayward is guilty of capital murder first or aggravated robbery first or murder first. Okay? You can consider them in any order you want to. You can consider them all at the same time, but you do not have to say, well, let's say -- let's take capital murder first and see if the State has fulfilled their obligation beyond a reasonable doubt in that.
>
> [Prosecutor]: Well, Judge, we're going to object. That's contrary to what the charge says. The charge says you have to find him not guilty of capital murder and then move onto felony murder.

8

> THE COURT: Sustained. Jury will follow the instructions as they're written.

Notably, the State did not object to Slater's having said at least three times that the jury could consider the charge as a whole before beginning to explain what the jury did "not have to say." *See id.* The State's objection at trial seemed to be that Slater was beginning to explain approaching the instructions contrary to the written charge. Slater's argument is that the trial court "put its stamp of approval" on the State's alleged misstatement of the law—ostensibly that the jury did not have to consider the charge as a whole. We will assume without deciding that the trial court erred by sustaining the State's objection, but we will overrule Slater's point on appeal because we generally presume that the jury follows the trial court's instructions. *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005); *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998). The presumption is refutable, but an appellant must rebut the presumption by pointing to evidence that the jury failed to follow the trial court's instructions. *Colburn*, 966 S.W.2d at 520. Here, even though the trial court sustained the State's objection, the trial court's statement to the jury was that it was to "follow the [jury] instructions as they're written." Slater fails to point to any evidence that rebuts the presumption that the jury followed the trial court's instruction to follow the charge as written. We overrule Slater's second point.

## C.     Statement Made by the State During Voir Dire

In his third point, Slater argues that the trial court erred by overruling his objection to the State's statement during voir dire that the "[j]ury has to find the Defendant not guilty of the greater offense or have a reasonable doubt and resolve that doubt in favor of the lesser offense before it can consider the lesser offense."  Slater's argument is not a model of clarity.  Indeed, Slater's argument at trial was that this statement by the prosecutor was a misstatement of the law in that it removed the jury's duty "to consider the charge as a whole in every aspect of conduct that the Judge submits for their consideration."  In his briefing on appeal, Slater cites both *Barrios* and *Boyett*, reciting where both cases found fault with some of the language used in jury charges in those cases despite upholding the charges as a whole.  *Barrios*, 283 S.W.3d at 352–53; *see Boyett*, 692 S.W.2d at 516.  He then cites the law on improper jury argument. *See Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009).  But Slater does not analyze how the language in this case is either similarly deserving of criticism or dissimilar enough from those cases that the language used here rises to the level of improper jury argument.

It seems that Slater's argument is that the prosecutor's statement was an improper statement of the law because it somehow introduced a unanimity requirement into the law, and that the trial court erred by failing to sustain his objection to the State's statement.  *See Sholars v. State*, 312 S.W.3d 694, 701 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd), *cert. denied*, 121 S. Ct. 156

10

(2010) ("Appellant argues that the State introduced a unanimity requirement into its statement of the law and that the trial court erred in failing to sustain his objection to the State's misstatement of the law and thus deprived him of his constitutional right to due process by requiring him to mount a successful defense to capital murder before considering the lesser included charge of felony murder or any other lesser included charge.").

To be permissible, jury argument must fall within one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) response to argument of opposing counsel; or (4) plea for law enforcement. *Brown*, 270 S.W.3d at 570. "It is not error for the State to quote or paraphrase the jury charge, even if the charge presents a negative instruction to the panel." *Whiting v. State*, 797 S.W.2d 45, 48 (Tex. Crim. App. 1990). But argument that misstates the law or is contrary to the court's charge is improper. *Id.*; *Burke v. State*, 652 S.W.2d 788, 790 (Tex. Crim. App. 1983); *Grant v. State*, 738 S.W.2d 309, 311 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd). And by overruling the defense's objection to the prosecution's misstatement of the law, a trial court puts the stamp of approval on the prosecutor's misstatement of the law. *See Griffin v. State*, 779 S.W.2d 431, 434 (Tex. Crim. App. 1989); *Burke*, 652 S.W.2d at 790.

In this case, the State paraphrased the jury instruction by telling the jurors that it was to "find the Defendant not guilty of the greater offense . . . before it can consider the lesser offense." While perhaps not the most eloquent summation of the jury instructions, we conclude that the statement did not convey an improper

11

principle or conclusion regarding the law that the jury is to consider the entire charge as a whole. *See Sholars*, 312 S.W.3d at 700. For example, in *Sholars*, our sister court concluded that the State had not made an improper jury argument when it stated that the jury had to decide whether appellant was "guilty or not guilty of capital murder *first*," before moving to the charge's lesser-included offenses. *Id.* at 702. [Emphasis added.] The *Sholars* court also noted that the statement made tracked the jury charge, "a charge that the Court of Criminal Appeals approved in *Barrios*." *Id.*

We conclude similarly in this case that the State's statement tracked the language of the jury charge which states, "you will acquit [Slater] of the offense of capital murder, as charged in the indictment, and *next* consider whether he is guilty of the offense of murder." [Emphasis added.] The court of criminal appeals approved similar language in jury charges found in both *Barrios* and *Boyett*, cases both cited by Slater. *Barrios*, 283 S.W.3d at 352–53; *Boyett*, 692 S.W.2d at 516. Moreover, at the charge conference in this case, Slater himself asked for substituted language that seemingly included "stair-step" language. Slater asked for the language "or if you are unable to agree you will *next* consider whether [Slater] is guilty of the offense of murder." [Emphasis added.] Additionally, as noted in *Barrios,* although "inartful" language has the potential to confuse a jury, there is no real indication that the language confused the jury when, like in this case, the jury unanimously finds a defendant guilty of the greater offense. *Barrios*, 283 S.W.3d at 352–53. We conclude that the trial court

12

did not err by overruling Slater's objection to the State's statement. We overrule Slater's third point.

### D. Sufficiency of the Evidence on the Element of Intent

In his fourth point, Slater contends that the evidence is legally insufficient to support a finding that he possessed the specific intent to kill Sharma. We disagree. In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

A person commits the offense of capital murder if he intentionally commits murder while in the course of committing a robbery. Tex. Penal Code Ann. § 19.03(a)(2) (West Supp. 2012). Capital murder requires intent to kill. *See id.* § 19.03(a)(2). Intent is most often proven through the circumstantial evidence surrounding the crime. *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991), *cert. denied*, 504 U.S. 974 (1992), *overruled on other grounds, Fuller v. State*, 829 S.W.2d 191 (Tex. Crim. App. 1992), *cert. denied*, 508 U.S. 941 (1993); *Dominguez v. State*, 125 S.W.3d 755, 761 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). A jury may infer intent from any facts that tend to prove its existence, such as the acts, words, and conduct of the defendant. *Hernandez*, 819 S.W.2d at 810; *Beltran v. State*, 593 S.W.2d 688, 689 (Tex. Crim. App.

[Panel Op.] 1980); *Dominguez*, 125 S.W.3d at 761. An intent to kill may be inferred from the use of a deadly weapon, unless it would not be reasonable to infer that death or serious bodily injury could result from the use of the weapon. *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996), *cert. denied*, 522 U.S. 832 (1997); *Dominguez*, 125 S.W.3d at 762. And when a deadly weapon is fired at close range and death results, the law presumes an intent to kill. *See Sholars*, 312 S.W.3d at 703 (citing *Childs v. State*, 21 S.W.3d 631, 635 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd)). Furthermore, when an assailant uses a gun he knows to be loaded during the commission of a robbery, the jury can reasonably infer intent to kill. *See Mouton v. State*, 923 S.W.2d 219, 223 (Tex. App.—Houston [14th Dist.] 1996, no writ) ("Because appellant failed to remove the bullets and used a gun he knew to be loaded, the jury could reasonably infer an intent to kill.").

Slater does not dispute that while in the course of attempting to rob Sharma, he possessed a gun that discharged, causing Sharma's death. Slater's argument is that he presented evidence that after the shooting he made multiple statements that he never intended to kill Sharma and that at the time he fled the Shell station, he did not know that he had killed Sharma. But simply because Slater presented conflicting evidence of his intent does not render the evidence insufficient. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991) (discussing that a reviewing court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict

14

in favor of the prosecution, and must defer to that resolution."). Because the law presumes that Slater had an intent to kill when he fired his gun at Sharma in close range and that Sharma's death resulted from that shooting, we conclude that when viewing this evidence in the light most favorable to the jury's verdict, a rational trier of fact could have found that Slater possessed the specific intent to kill Sharma. *See Jackson*, 443 U.S. at 324–25, 99 S. Ct. at 2792; *Sholars*, 312 S.W.3d at 703. This finding by the jury is further buttressed by evidence that Slater, as he acknowledged in his recorded interview with police, knew the gun he used was loaded. *See Mouton*, 923 S.W.2d at 223. Moreover, the jury watched surveillance video footage of Slater shooting Sharma. We overrule Slater's fourth point.

## E. Statutory Life Without Parole

In his fifth point, Slater argues that the automatic life sentence imposed by section 12.31 of the penal code and article 37.071, section 1 of the code of criminal procedure violates his right to an individualized sentence under the Eighth and Fourteenth Amendments. U.S. Const. amend. VIII, XIV; Tex. Code Crim. Proc. Ann. art. 37.071, § 1 (West Supp. 2012); Tex. Penal Code Ann. § 12.31(a) (West 2011). But numerous courts, including this one, have rejected the argument that the assessment of a mandatory life sentence for the offense of capital murder violates the Eighth Amendment. *See Sierra v. State*, 157 S.W.3d 52, 64 (Tex. App.—Fort Worth 2004), *aff'd*, 218 S.W.3d 85 (Tex. Crim. App. 2007); *see also Buhl v. State*, 960 S.W.2d 927, 935 (Tex. App.—Waco, pet.

15

ref'd), *cert. denied*, 525 U.S. 1057 (1998); *Laird v. State*, 933 S.W.2d 707, 714–15 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd); *Prater v. State*, 903 S.W.2d 57, 59 (Tex. App.—Fort Worth 1995, no pet.). We are not persuaded by Slater's request to revisit this issue. We overrule Slater's fifth point.

## IV. CONCLUSION

Having overruled all five of Slater's points on appeal, we affirm the trial court's judgment.

BILL MEIER
JUSTICE

PANEL: GARDNER, MCCOY, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: June 13, 2013