**Affirmed and Memorandum Opinion filed April 17, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00862-CR

---

## DURELL NOAL WATTS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

### On Appeal from the 434th Judicial District Court
### Fort Bend County, Texas
### Trial Court Cause No. 10-DCR-056029A

---

## M E M O R A N D U M   O P I N I O N

Appellant Durell Noal Watts appeals his murder conviction and sixty-year prison sentence. On appeal, appellant argues that (1) the evidence presented at trial was insufficient to support his conviction, and the trial court committed reversible error by (2) overruling appellant's challenges for cause to veniremembers four and six, (3) admitting evidence during the guilt-innocence phase of trial that appellant had struck his wife while she was pregnant, and (4) overruling appellant's

objections to the prosecutor's arguments outside the record during the punishment phase of the trial. We affirm.

## BACKGROUND

Appellant was indicted for the murder of complainant Courtney Wilson. The complainant was visiting the home of his sister, Ashley Watts (née Wilson). Ashley lived with appellant and was his girlfriend and the mother of his children; she and appellant later married. During the complainant's visit, an argument occurred that ended in the complainant's death. This was not the first altercation between appellant and the complainant, who had fought over appellant's treatment of Ashley on multiple occasions. Testimony introduced at appellant's trial described appellant's relationship with Ashley as an occasionally violent one, which was upsetting to the complainant. Carey Jones, a brother of the complainant and Ashley, testified that he had witnessed the complainant intervene—sometimes physically—to protect their sister from appellant on multiple occasions. Ashley also testified that she had broken up fights between the complainant and appellant.

Jones testified that although the complainant and appellant sometimes got along, on the day in question the two were on bad terms. Jones was present during the argument, which began when Ashley confronted appellant about calls he received on his cell phone from an unknown number. Appellant and Ashley began yelling and cursing at each other in the kitchen, and Jones and the complainant could hear them from the living room. As the argument escalated, the complainant decided to interject himself into the argument, which evolved into an argument between the complainant and appellant. According to Jones, appellant retrieved his gun from a closet during the argument, although appellant claimed to have had the gun in his pocket the whole time.

Appellant claimed he only pulled out the gun because he was afraid of the

2

complainant, who had knocked him unconscious the last time they fought over his treatment of Ashley. Appellant testified that the complainant attempted to grab the gun from him and, in their ensuing struggle over the weapon, the gun fired. Appellant testified that he did not pull the trigger but that the gun "just went off." Jones denied that the complainant had reached for the gun.

Appellant was tried before a jury and found guilty of murder. During the jury selection phase of appellant's trial, he challenged two veniremembers for cause, arguing that they were unable to give him the benefit of the presumption of innocence. The trial court overruled appellant's challenges, but granted him one additional strike.

At trial, appellant objected to the introduction of testimony about previous arguments he had had with Ashley, some of which had turned physical. Appellant argued that the testimony was more prejudicial than probative, and was offered in violation of Rule 404(b) and Rule 403 of the Texas Rules of Evidence to show that he was a wife beater. The trial court overruled appellant's objections.

During the punishment phase of the trial, appellant objected that certain statements made by the State were outside the record. Appellant objected to the State asking the jury whether a "father of the year" would scream and yell that he's a gangster disciple while holding a gun in front of his children. Appellant also objected to the State's argument that he was not paying child support and should have been working three jobs. The trial court overruled appellant's objections, and the jury sentenced appellant to sixty years in prison.

## ANALYSIS

Appellant presents five issues on appeal, which we consolidate into four. He argues that (1) there was insufficient evidence to prove the shooting was

intentional and not accidental; (2) the trial court erred in overruling his challenges for cause to two veniremembers; (3) the trial court erred in admitting prejudicial extraneous-offense evidence; and (4) the State made improper arguments which were outside the record during the punishment phase of the trial. We consider each issue in turn.

## I.  Sufficient evidence supports appellant's conviction.

In his third issue, appellant argues the evidence at trial was factually insufficient to sustain his conviction because the prosecution did not prove that he either intended to kill the complainant or cause him serious bodily injury. As the legal sufficiency standard of *Jackson v. Virginia*, 443 U.S. 307 (1979), is the only standard for reviewing whether the evidence is sufficient to support a criminal conviction beyond a reasonable doubt, we apply that standard. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). Considering all of the evidence in the light most favorable to the verdict, we must determine whether a rational jury could find each element of the offense beyond a reasonable doubt. *Id.*

Here, the authorizing statute and indictment required the jury to find that the defendant either (1) intentionally or knowingly caused the death of the complainant by shooting him with a firearm; or (2) intended to cause serious bodily injury and discharged a firearm in the complainant's direction, an act clearly dangerous to human life, which caused the complainant's death. *See* Tex. Penal Code Ann. § 19.02(b)(1)–(2) (West 2011); *Malik v. State*, 953 S.W.2d 234, 239–40 (1997) (holding that sufficiency is measured by the hypothetically correct jury charge, which accurately sets out the law and is authorized by the indictment). There was sufficient evidence to support a finding of each element of the offense beyond a reasonable doubt.

The jury is the sole judge of the credibility of witnesses and the weight to give testimony, and our role on appeal is simply to ensure that the evidence reasonably supports the jury's verdict. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). The jury may infer intent to kill from any facts in evidence which it determines proves its existence, such as the use of a deadly weapon. *Brown v. State*, 122 S.W.3d 794, 800 (Tex. Crim. App. 2000); *Ross v. State*, 861 S.W.2d 870, 873 (Tex. Crim. App. 1992) ("The jury may infer the intent to kill from the use of a deadly weapon unless it would not be reasonable to infer that death or serious bodily injury could result from the use of the weapon."); *see also Mouton v. State*, 923 S.W.2d 219, 223 (Tex. App.—Houston [14th Dist.] 1996, no pet.).

At trial, appellant testified that he and the complainant were each pulling on the gun and it "went off." But the jury also heard conflicting testimony from Jones that there was no struggle over the gun. Although appellant and Ashley testified that Jones was not in the kitchen at the time the gun went off, their testimony does not render insufficient Jones's contrary testimony. The jury was entitled to believe Jones's testimony that there was no struggle and infer that the gun did not fire without appellant pulling the trigger. *See Montgomery*, 369 S.W.3d at 192.

Appellant points to his actions after shooting the complainant, such as applying pressure to the complainant's neck wound and telling him he was sorry, as evidence that the shooting was accidental and he lacked any intent to injure. But our task is to view the evidence in the light most favorable to the verdict. *Temple*, 390 S.W.3d at 360. These actions, although indicative of regret, are not incompatible with the inference that appellant possessed the requisite intent at the critical moment when he shot the complainant.

The jury was free to disregard appellant's direct testimony that he did not mean to shoot the complainant. *See Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000) (holding evidence was sufficient to prove intent to kill despite appellant's calling "9-1-1" and describing the death as accidental in his confession); *Jones v. State*, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996) (holding evidence was sufficient to prove intent to kill despite appellant's statement that he "only wished to scare the victim"). Appellant was holding and waving around a loaded gun. *See Mouton*, 923 at 223 ("If [appellant] actually intended to use the gun merely to scare his victim, as he testified, he could have removed the bullets."). Although appellant testified that he thought he had removed the bullets, the jury was entitled to disregard that testimony, *Wyatt*, 23 S.W.3d at 30, particularly in light of appellant's later testimony that he did not want the complainant to get control of the gun, which could suggest appellant knew the gun was not in an unloaded and harmless condition.

Furthermore, there was testimony at trial that appellant and complainant were on "bad terms," and that appellant retrieved the gun in the middle of a heated argument with the complainant. This testimony, as well as appellant's testimony that the gun was cocked and no one had touched it but him, provided a sufficient context from which to infer the requisite intent. See *Godsey v. State*, 719 S.W.2d 578, 580–81 (Tex. Crim. App. 1986) (holding "the context of the offense, the way in which the pointing [of the gun] came about—the facts and circumstance of the offense, prove the intent"). Accordingly, we overrule appellant's third issue.

## II. The trial court did not err in overruling appellant's challenges for cause to veniremembers four and six.

In his first and second issues, appellant argues the trial court erred in overruling his challenges for cause to veniremembers four and six. Appellant

argues these veniremembers were biased either as a matter of law or fact because they were incapable of giving the appellant the benefit of the presumption of innocence. We hold the trial court did not abuse its discretion in denying appellant's challenges for cause to veniremembers four and six.

We review the entire record to determine whether sufficient evidence exists to support the trial court's ruling on a challenge for cause. *Davis v. State*, 329 S.W.3d 798, 807 (Tex. Crim. App. 2010). Because "the trial judge is in the best position to evaluate a veniremember's demeanor and responses," we will reverse a trial court's ruling only if the judge clearly abused his discretion. *Gardner v. State*, 306 S.W.3d 274, 295–96 (Tex. Crim. App. 2009); *Ferree v. State*, 416 S.W.3d 2, 7 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). The trial court's ruling warrants particular deference when a veniremember's responses are "ambiguous, vacillating, unclear, or contradictory." *Gardner*, 306 S.W.3d at 296; *Ferree*, 416 S.W.3d at 7; *but see Anderson v. State*, 633 S.W.2d 851, 853–54 (Tex. Crim. App. [Panel Op.] 1982) (holding trial court lacks discretion to refuse challenges to prospective jurors who are biased as a matter of law).

The defense may challenge a prospective juror for cause if he has a bias or prejudice in favor of or against the defendant, or against any of the law applicable to the cause upon which the defense is entitled to rely. Crim. Proc. Ann. Art. 35.16(a)(9), (c)(2) (West 2006); *see also Gardner*, 306 S.W.3d at 295. The trial court must excuse the juror if "the bias or prejudice would substantially impair the prospective juror's ability to carry out his oath and instructions in accordance with the law." *Sells v. State*, 121 S.W.3d 748, 759 (Tex. Crim. App. 2003).

The defense may also challenge a prospective juror for already having formed a conclusion as to the defendant's guilt or innocence that would influence the juror's verdict. Crim. Proc. Ann. Art. 35.16(a)(10) (West 2006); *see also*

7

*Newbury v. State*, 135 S.W.3d 22, 26, 28–29 (Tex. Crim. App. 2004). But even if there is evidence that an opinion the veniremember may have formed would influence his verdict, the trial court may deny the challenge so long as other testimony permits a reasonable conclusion that the veniremember could reach a verdict based solely on evidence presented at trial. *Newbury*, 15 S.W.3d at 38–39.

Appellant seems to argue that his challenges during voir dire—that veniremembers four and six were "putting the indictment, as a burden on the Defense"—were challenges for cause on the basis that the veniremembers had a bias or prejudice against either him or the presumption of innocence upon which he was entitled to rely. On the other hand, the State characterizes appellant's challenges as contending that the prospective jurors had a pre-formed conclusion as to the defendant's guilt or innocence. We need not resolve this disagreement, however, because we conclude the denial of appellant's challenges for cause was not an abuse of discretion regardless of the category under which they fall.

This is not a case in which the trial court lacks discretion because the prospective juror unequivocally admits to, or otherwise expresses, a bias or an inability to apply the law correctly. *Contra Johnson v. State*, 982 S.W.2d 403, 404, 406 (Tex. Crim. App. 1998) (holding trial court abused its discretion in denying challenge for cause to two prospective jurors who "stated unequivocally" they could not consider assessing the applicable minimum legal punishment); *Williams v. State*, 565 S.W.2d 63, 65 (Tex. Crim. App. 1978) (holding trial court abused its discretion in overruling challenge to veniremember who "stated that he was prejudiced against the appellant as a result of his dealings with appellant"). For example, although veniremember six's statements could be understood to mean that she would view the indictment as an indication that there was some evidence of appellant's guilt, the veniremember also avowed that the burden was on the

8

State, she assumed appellant was innocent, and she wanted the State to show the evidence against him. *See Moore v. State*, 999 S.W.2d 385, 400 (Tex. Crim. App. 1999) (holding the record was equivocal as to veniremember's ability to follow the law because, "in portions of the record she states she would not require that premeditation be shown before imposing the death penalty, in other portions she suggests that she would require premeditation"). Similarly, veniremember four affirmed that she was "willing to keep [her] mind open . . . either way," would follow the law that appellant is presumed innocent, and would "hold the State to the burden of proving each and every element [of the offense] beyond a reasonable doubt, before [she] found the defendant guilty."

We hold that the trial court did not abuse its discretion in resolving any contradictions in the veniremembers' statements regarding the indictment and the presumption of innocence. *See Threadgill v. State*, 146 S.W.3d 654, 669 (Tex. Crim. App. 2004) (holding the trial court did not abuse its discretion in denying the challenge for a cause to a veniremember who candidly stated at one point that he would give some weight to the grand jury's indictment); *Swearingen v. State*, 101 S.W.3d 89, 99 (Tex. Crim. App. 2003) (holding no abuse of discretion in denying the challenge for cause to a veniremembre who "testified that he suspected the defendant was 'here for some reason'"); *Ladd v. State*, 3 S.W.3d 547, 560 (Tex. Crim. App. 1999) (holding no abuse of discretion in denying challenge for cause to veniremember who "stated that he 'leaned' in the direction of believing appellant guilty simply because appellant had been arrested and indicted"); *Satterwhite v. State*, 858 S.W.2d 412, 420 (Tex. Crim. App. 1993) (per curiam) (holding no abuse of discretion in denying challenge for cause to veniremember who stated "[w]ell, you don't just go out and indict people without reason to indict them do you? Our system doesn't do that" ). We therefore overrule appellant's first and second

issues.

**III.    The trial court did not abuse its discretion in admitting testimony about appellant striking Ashley.**

In his fourth issue, appellant contends that the trial court erroneously admitted evidence of extraneous offenses.  Appellant argues that testimony about him striking Ashley, particularly at times when she was pregnant, was inadmissible under Rule 404(b) of the Texas Rules of Evidence.  He also argues that to the extent the testimony was not excluded by Rule 404(b), it was more prejudicial than probative under Rule 403 and should not have been admitted.

**A.    Testimony regarding the relationship between appellant, Ashley, and the complainant was relevant for the non-character purpose of rebutting appellant's defensive theory of accident.**

Rule 404(b) prohibits admitting evidence of "other crimes, wrongs or acts" during the guilt-innocence phase of a criminal trial in order "to prove the character of a person in order to show action in conformity therewith."  Tex. R. Evid. 404(b).  The same evidence may be admissible, however, if it "logically serves to make more or less probable an elemental fact, an evidentiary fact that inferentially leads to an elemental fact, or defensive evidence that undermines an elemental fact." *Martin v. State*, 173 S.W.3d 463, 466 (Tex. Crim. App. 2005).  For example, extraneous-offense evidence is admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Tex. R. Evid. 404(b); *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003).  The State may also use extraneous offenses to rebut defensive theories raised during opening argument or cross-examination of a State's witness. *See Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008); *Powell v. State*, 63 S.W.3d 435, 438–39 (Tex. Crim. App. 2001); *Bargas v. State*, 252 S.W.3d 876, 890 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

10

The trial court's determination that extraneous-offense evidence contributes to a relevant inference is entitled to deference; we will reverse only for an abuse of discretion. *See Ransom v. State*, 920 S.W.2d 288, 300 (Tex. Crim. App. 1994) (op. on reh'g). A trial court has abused its discretion if the ruling is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).

Here, the trial court did not act outside the zone of reasonable disagreement in admitting the evidence of the family's tumultuous relations because appellant's intent was a critical issue at trial. Appellant's opening statement depicted his shooting of complainant as an accident. *See Bass*, 270 S.W.3d at 563 (holding that rebutting a defensive theory raised in opening argument is a permissible purpose under Rule 404(b)). The trial court could reasonably conclude that testimony regarding the catalyst for previous confrontations between the complainant and appellant—appellant's altercations with Ashley—was relevant to the jury's assessment of appellant's accident defense. For example, Jones testified that sometimes when the complainant intervened in an altercation, it "would get calmed down, depending on the situation," but that other times "it escalated into [appellant] and [the complainant] arguing." The trial court could reasonably have concluded that testimony about appellant's altercations with Ashley might lead to an inference about appellant's intent, based on the likelihood that the complainant would intervene and the situation would escalate to the point that appellant would feel the need to pull out a weapon.

Ashley's pregnant state could also have a bearing on the potential for violence between the two men, and therefore the likelihood that appellant would feel the need to use a weapon. The jury heard testimony that the complainant was "particularly protective" of his sister when she was pregnant, suggesting an

increased potential for the complainant to intervene.  The jury also heard testimony that appellant never hit his wife when she was pregnant, which could have suggested to the jury that the appellant was relatively safe from the complainant's protective instincts on the day of the shooting.  Because Ashley was pregnant on the day of the shooting, the trial court could reasonably conclude that information about the complainant's and appellant's patterns of behavior during her pregnancies would be relevant to their actions and intent on the day of the shooting.  Accordingly, the trial court did not abuse its discretion by concluding the evidence was relevant under Rule 404(b) to matters aside from character conformity.

**B.      Concluding the testimony was more probative than prejudicial was not outside the zone of reasonable disagreement.**

Concluding that the evidence is permissible under Rule 404(b) does not end the inquiry, however.  Even if offered for a permissible purpose, the evidence should be excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice from its admission.  *Moses*, 105 S.W.3d at 626.  Rule 403 favors admitting relevant evidence, and "the presumption is that relevant evidence will be more probative than prejudicial."  *Smith v. State*, 105 S.W.3d 203, 207 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd).  In weighing the probative value and prejudicial effect of the evidence, the trial court should consider:

(1)     how compellingly evidence of the extraneous offense serves to make a fact of consequences more or less probable;

(2)     the extraneous offense's potential to impress the jury in some irrational but indelible way;

(3)     the trial time that the proponent will require to develop evidence of the extraneous misconduct;

(4)     the proponent's need for the extraneous transaction evidence;

*Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002). We will defer to the trial court's balancing of these factors so long as it is not outside the zone of reasonable disagreement. *Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996).

Here, appellant has not overcome the presumption that the evidence was more probative than prejudicial. Although we acknowledge that testimony about appellant hitting a pregnant woman was likely to be emotionally charged, we cannot say the testimony was "so horrifying that a juror of normal sensitivity would necessarily have difficulty rationally deciding the critical issues of the case" after hearing it. *See Alvarado v. State*, 912 S.W.2d 199, 212 (Tex. Crim. App. 1995), *overruled on other grounds by Warner v. State*, 245 S.W.3d 458 (Tex. Crim. App. 2008). Furthermore, the first and fourth factors weigh in favor of admission. Because appellant made claims that the shooting was an accident, the State had a compelling need for evidence to rebut this explanation. *See Casey v. State*, 215 S.W.3d 870, 884 (Tex. Crim. App. 2007) ("The State had no other means to rebut the defense theories, and this rebuttal evidence was not offered merely to excite emotions against the defendant."). As discussed above, the relationship between the two men—with Ashley serving as a catalyst to violence between them—could provide a basis for the jury to believe appellant's use of the gun was not accidental. *See id.*

The third factor does not weigh heavily against admission. Presenting the evidence that appellant had hit Ashley did not consume an inordinate amount of time, as it was touched on only briefly with each witness. *See id.* at 880. The parties spent significantly more time discussing the character of the fights between the complainant and appellant. We decline to find that the risk of unfair prejudice from the testimony about fights between appellant and Ashley substantially

outweighed its testimony's probative value.

### C. Even if admitting the testimony was outside the zone of reasonable disagreement, the error was harmless in light of testimony received without objection.

On appeal, we disregard non-constitutional error that does not affect substantial rights. Tex. R. App. P. 44.2(b); *Schmutz v. State*, No. PD-0530-13, - S.W.3d -, 2014 WL 300810, at *8 (Tex. Crim. App. Jan. 29, 2014). An error that has a "substantial and injurious effect or influence in determining the jury's verdict" is one that affects substantial rights. *Schmutz*, 2014 WL 300810, at *8. When determining the likelihood that the error adversely affected the jury's verdict, we consider the entire record. *Id.*

On this record, we conclude that the testimony appellant challenges did not have a substantial effect on the verdict because substantially similar testimony was received without objection earlier in the trial. *See Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010) ("[E]rroneously admitting evidence 'will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling."); *Klein v. State*, 273 S.W.3d 297, 318 (Tex. Crim. App. 2008) (holding "any error in admitting the testimony . . . was harmless since the substance of this evidence was admitted without limitation or objection" at other points in the trial); *Lacaze v. State*, 346 S.W.3d 113, 122 (Tex. App.— Houston [14th Dist.] 2011, pet. ref'd) (holding erroneously admitting evidence does not affect a substantial right if the same or similar evidence is admitted without objection at another point in the trial).

Although appellant eventually objected to the jury hearing testimony that appellant had hit Ashley while she was pregnant, this objection came after the jury had heard ample testimony regarding the couple's relationship. Appellant did not

object to Jones's testimony, spanning several pages of the record, as to verbal and physical fights he witnessed between appellant and Ashley. Jones testified that he witnessed appellant hit Ashley's face and chest with his fists, leaving bruises, marks, and bleeding cuts.[1] Eventually, appellant objected to the State "going further" into the extraneous acts, asserting that it had already established "the basis of why this event happened." Given the nature of the earlier testimony, we conclude that any marginal harm from additional testimony that Ashley was pregnant during some of these episodes does not warrant reversal. *See Coble*, 330 S.W.3d at 282. We therefore overrule appellant's fourth issue.

## IV. The trial court did not err in overruling appellant's objections to the State's closing argument.

In his fifth issue, appellant argues the trial court committed reversible error in overruling his objections to the State's closing arguments at the punishment phase of the trial. Appellant contends the State's arguments (1) did not fall within a permissible category of argument, (2) were outside the record, and (3) urged the jury to punish him for collateral crimes.

Permissible jury arguments include summations of the evidence, reasonable deductions from the evidence, and responses to opposing counsel's argument. *Felder v. State*, 848 S.W.2d 85, 94–95 (Tex. Crim. App. 1992); *Prince v. State*, 192 S.W.3d 49, 57 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). Arguments that, in light of the entire record, are "extreme or manifestly improper, violative of a mandatory statute, or inject[] new facts, harmful to the accused, into the trial" are cause for reversal. *Felder*, 848 S.W.2d at 95.

---

[1] Indeed, appellant admitted to having "allowed and did not object to any extraneous - - extraneous matters to come in, to sort of set the context." *But see Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) ("[T]he objection must be made at the earliest possible opportunity.").

Under the current version of Article 37.07 of the Code of Criminal Procedure, during the punishment phase the State may offer evidence of any extraneous crime or bad act that the defendant committed. *Fields v. State*, 1 S.W.3d 687, 689 (Tex. Crim. App. 1999). Although the jury should not consider acts unless satisfied beyond a reasonable doubt that the defendant is criminally responsible for them, the jury may use the evidence of such crimes or bad acts however it chooses in assessing punishment. *Id.*; *Arthur v. State*, 11 S.W.3d 386, 392 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd).

In the present case, the challenged statements "could reasonably be deemed as summation of the evidence or a reasonable deduction from the evidence." *Prince,* 192 S.W.3d at 57. Appellant objected that there was no evidence that appellant yelled that he was a gangster disciple in front of his children while holding a gun, or that he did not pay child support. There was testimony, however, that appellant screamed he was a gangster disciple in the confrontation leading up to the complainant's shooting, as well as on other occasions. In connection with earlier testimony that the children were home during the fatal confrontation, this characterization was a reasonable deduction from the evidence.

The jury also heard evidence from which it could form a reasonable deduction that appellant did not pay child support. The evidence showed that appellant has six children, including three with Ashley. Although Ashley testified that he "has made payments" to support his children in the past, there was also testimony that appellant's job paid him in cash, without making any deductions for taxes or child support. Furthermore, Jones testified that appellant was not the bread winner in the family and that claims he supported his children would not be completely true. Ashley's step-father claimed to be "a big part" of Ashley's financial support, and her mother testified to having paid for "bill money, water

bill money, diapers, milk, food, [and] gas." Ashley's mother also testified that appellant had "abandoned" some of his other children. This testimony formed the basis for a reasonable deduction that appellant was not paying child support.

We overrule appellant's fifth issue.

## CONCLUSION

Having overruled each of appellant's issues, we affirm the judgment of the trial court.


/s/      J. Brett Busby
         Justice

Panel consists of Justices McCally, Busby, and Wise.

Do Not Publish — Tex. R. App. P. 47.2(b).