**Robert Luches PARISH, Appellant**

v.

**The STATE of Texas, Appellee**

**NO. 14–14–00394–CR, NO. 14-14-00396-CR**

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed April 5, 2016

Wilford, A. Anderson, Houston, TX, for Appellant.

Catina Haynes, Houston, TX, for State.

Panel consists of Chief Justice Frost and Justices Christopher and Donovan.

**OPINION**

John Donovan, Justice

A jury convicted appellant, Robert Luches Parish, of murdering Curtis Wyatt and Beverly Parish. In each case, the trial court, after finding enhancement paragraphs "true," sentenced appellant to life imprisonment. In a single issue, appellant claims the evidence is factually and legally insufficient to support the murder convictions. We affirm.

## I. BACKGROUND

On the evening of February 23, 2011, Erica Morgan, who had recently been released from jail, spent time with friends drinking at a bar. At closing time, around 2:00 a.m. on February 24, 2011, Morgan returned to the home of her boyfriend, Michael Simons. After arguing with Simons, Morgan saw people in the front yard at appellant's house, which was nearby, and she walked over to visit. Appellant lived in the house with his aunt, Beverly Parish and Curtis Wyatt, who were both home with appellant at that time.

Morgan gave appellant ten dollars and asked him to buy her some crack cocaine. Appellant agreed, left Morgan inside his

house, and then returned with "a dime" of crack cocaine. After smoking the crack, appellant "flipped out," paced the room, cursed at Morgan and Wyatt that they were going to get him sent to the penitentiary, and ordered them to get out of his room.

Morgan and Wyatt walked out of appellant's bedroom and into the living room. Wyatt sat on a chair in the living room and began cleaning the crack pipe. Appellant entered the living room and shot Wyatt in the mouth with a gun. Wyatt spit out some of his teeth that had been dislodged by the bullet and asked appellant why he shot him. Wyatt then crawled around a corner where appellant shot him multiple times before fatally wounding and killing him. Appellant also fired two shots through a bedroom door where Beverly was located. Both shots struck and killed Beverly. Appellant then turned toward Morgan and shot her in the mouth and again in the right hand. Morgan begged appellant not to shoot her anymore. Appellant stopped shooting, and Morgan ran back to Simons's house, but he refused to let her inside. Not knowing what to do, Morgan initially lay down on a sofa on Simons's porch and then walked over to a nearby street curb and sat down.

Jarrod Tolbert, who lived near Simons and around the corner from appellant, came outside after he heard a series of at least five gunshots with a pause in between rounds. Tolbert heard moaning and found Morgan sitting on the street curb; she appeared to be in shock. Morgan told Tolbert that appellant had shot her in the mouth. Morgan was making gurgling and giggling sounds. Tolbert initially did not believe Morgan had been shot until he saw the wounds and bloodstains at the back of Morgan's neck. Tolbert paid a friend to drive Morgan to receive medical attention. Morgan was dropped off at a nearby fire station and, thereafter, was transported by ambulance to the hospital. Morgan's hands were not tested for gunshot residue at the hospital.

After putting Morgan in his friend's car, Tolbert went to appellant's house to check on the occupants. Before going inside, Tolbert called the police. Tolbert then knocked on appellant's window and called out appellant's name, but there was no response. Tolbert went inside and found that Wyatt and Beverly were both dead. Tolbert called 911 and told the dispatcher that there had been a homicide, two people had been shot, and one person had been shot in the mouth. Tolbert named appellant as the shooting suspect to the 911 operator. Appellant was not in the house when police arrived.

Morgan survived being shot twice, but injuries to her mouth and throat prevented her from speaking for several weeks. Nevertheless, Morgan communicated by writing notes to the officers who were investigating the murders of Beverly and Wyatt. Morgan identified appellant as the person who shot and killed Wyatt and then shot Morgan. Morgan also identified appellant from a photo array shown to her in the hospital. After providing the officers with extensive notes, Morgan signed a sworn statement detailing the incident. Ultimately, after receiving a voice box, Morgan provided a recorded oral statement to the officers.

Detective Roy Swainson, one of the investigating officers, found Wyatt and Beverly dead in their home when he arrived within hours of the shooting. Officer Lorenzo Verbitskey, a crime-scene unit investigator, collected blood samples, teeth, and seven spent 9-millimeter Winchester Luger shell casings from around the house. A crack pipe was collected from Wyatt's pant pocket. Officer Verbitskey documented bullet holes in the door of the

bedroom where Beverly's body was found and concluded that she was likely standing near the door when the two bullets were fired. Officer Verbitskey saw no signs of a struggle in the house,[1] and none of Morgan's DNA evidence was found under the fingernails of Wyatt or Beverly. Ballistics testing conducted by Tammy Lyons, a firearms examiner, showed that all bullets were fired from the same weapon. Morgan later identified the same gun that was determined to be the murder weapon as the gun that appellant used to shoot her and Wyatt. Detective Swainson found that the results of the DNA testing were consistent with his investigation, including Morgan's account of events.

After the shootings, appellant neither returned to his house nor contacted his sister, Patricia Parish. A few days after the shootings, on February 26, 2011, Patricia unlocked her grandmother's house for a cleaning crew and, while speaking with a friend across the street, observed appellant entering appellant's home; Patricia called the police. On that same day, appellant approached Tolbert in Tolbert's front yard, and appellant showed Tolbert his gun; Tolbert contacted the police.

Later that day, when patrol officers spotted appellant walking in the street, appellant ran away as one officer pursued him on foot and another in a patrol car; he refused to obey orders to stop. Appellant tried to jump a fence; the officer on foot caught up to appellant, and a confrontation ensued, causing the officer in his patrol car to exit and assist in subduing appellant. One officer handcuffed appellant's left arm; however, appellant freed his right arm, pulled out a gun, and threatened to kill the officers if they did not shoot him. Both officers struggled with appellant to obtain control over the gun, and it was only after a third officer tasered appellant's thigh that they were able to take the gun from appellant. That gun, based on subsequent ballistic analysis and identification, was the same weapon that was used to kill Wyatt and Beverly.

Clay Davis, a DNA analyst, determined that there was DNA evidence of Morgan, Wyatt, and Beverly in the house. Davis did not have a known DNA profile of appellant at the time of his testing and thus did not compare the DNA profile of appellant to DNA evidence in the house. Davis testified that Morgan's DNA was not found under the fingernails of either Wyatt or Beverly, demonstrating there was no physical contact between them at that time. Davis did not test the gun retrieved from appellant for DNA evidence as he determined that the gun had been handled by too many people without gloves to allow for proper testing. Additionally, no gunshot-residue testing was performed on appellant because too much time had passed between the shootings and his apprehension.

Dr. Albert Chu, a medical examiner who performed an autopsy on Beverly's body, determined Beverly's cause of death was gunshot wounds to the head, neck, and torso. Dr. Chu also performed an autopsy on Wyatt's body and determined Wyatt's cause of death was gunshot wounds to the head, neck, and torso. The toxicology report revealed that Wyatt had ethanol and cocaine in his system.

Patricia testified that around the time their grandmother passed away (late-December 2010) appellant's behavior changed; he was displaying anger with the family, using drugs more frequently, acting paranoid, procuring a gun, "engaging" more often with Wyatt, and arguing with

---

1. Officer Verbitskey noted that there was an overturned laundry basket in the living room; however, he did not perceive it as indicating signs of a struggle.

Beverly. Patricia recalled an incident during that time frame when Wyatt said that appellant punched him in the jaw and put a knife to his neck, prompting Beverly to call the police. Additionally, on or around February 20 or 21, 2011, appellant told Patricia that Wyatt had stolen his gun and that appellant was going to kill Wyatt if he did not give the gun back. Patricia testified that appellant was irritated with his family because the amount he stood to inherit from his grandmother's insurance policy was reduced when the family used a portion to pay for burial expenses of an aunt and because appellant could not cash the check made out to him in the reduced amount because it was made out to "Robert Seymour," using his grandmother's last name.

## II. SUFFICIENCY OF THE EVIDENCE

In his sole issue, appellant argues the evidence is factually and legally insufficient to support his convictions. The Court of Criminal Appeals has abolished factual-sufficiency review, holding the evidence is reviewed only for legal sufficiency. *See Howard v. State,* 333 S.W.3d 137, 138 (Tex.Crim.App.2011); *accord Temple v. State,* 390 S.W.3d 341, 360 (Tex.Crim.App. 2013). Thus, we will consider appellant's issue under the legal-sufficiency standard of review.

### A. Standard of review

 When determining whether evidence is legally sufficient, we view all of the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State,* 340 S.W.3d 743, 746 (Tex.Crim.App.

2011) (citing *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). We do not sit as a thirteenth juror and may not substitute our judgment for that of the fact finder by re-evaluating weight and credibility of the evidence. *Isassi v. State,* 330 S.W.3d 633, 638 (Tex. Crim.App.2010). Rather, we defer to the responsibility of the fact finder to fairly resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* This standard applies equally to both circumstantial and direct evidence. *Id.* Circumstantial evidence is as probative as direct evidence in establishing guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State,* 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). Our duty as the reviewing court is to ensure the evidence presented actually supports a conclusion that the defendant committed the crime. *Williams v. State,* 235 S.W.3d 742, 750 (Tex.Crim.App.2007).

### B. Analysis

 A person commits murder if he (1) intentionally or knowingly causes the death of an individual, (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual, or (3) commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual. Tex. Penal Code Ann. § 19.02(b)(1)-(3) (West 2011). When the charge authorizes the jury to convict on more than one theory, as it did in both of the cases under review,[2] we will uphold the

---

**2.** In the case involving Wyatt's death, the jury was instructed only as to the first two theories

verdict if the evidence is sufficient on any of the theories presented. *Hooper*, 214 S.W.3d at 14.

A person acts intentionally with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. Tex. Penal Code Ann. § 6.03(a) (West 2011). A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b) (West 2011). Proof of a mental state almost always depends upon circumstantial evidence. *Varnes v. State*, 63 S.W.3d 824, 833 (Tex.App.–Houston [14th Dist.] 2001, no pet.). A jury may infer intent or knowledge from any facts that tend to prove its existence, including the acts, words, conduct of the accused, and the method of committing the offense. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim.App.2004); *Hart v. State*, 89 S.W.3d 61, 64 (Tex.Crim.App.2002). A jury may infer the intent to kill from the use of a deadly weapon unless it would not be reasonable to infer that death or serious bodily injury could result from the use of the weapon. *Jones v. State*, 944 S.W.2d 642, 647 (Tex.Crim.App.1996). A firearm is a deadly weapon *per se.* Tex. Penal Code Ann. § 1.07(a)(17)(A) (West Supp.2015).

In framing his issue for review, appellant contends that there was "insufficient evidence beyond a reasonable doubt that [he] shot and killed Curtis Wyatt and Beverly Parish." He further maintains that the "testimony of Jarrod Tolbert and Erica Morgan was too inconsistent, contradictory and contrary to the evidence to support a verdict of guilty in these cases." Appellant does not articulate what evidence is lacking and does not identify specific testimony of Tolbert and Morgan that purportedly fails to support the jury's verdicts.

Although appellant suggested during jury argument and cross-examination that Morgan shot Wyatt and Beverly and, in the course of struggling with appellant for the gun, Morgan shot herself twice, the jury heard testimony from Morgan to the contrary. Morgan denied struggling with appellant for the gun. Instead, Morgan testified that she heard five shots when appellant shot Wyatt and then appellant shot her twice. Tolbert's testimony corroborated Morgan's testimony as to the timing and minimum number of shots fired. *See Jackson*, 443 U.S. at 326, 99 S.Ct. 2781 (holding that appellate courts defer to the jury's resolution of conflicts in evidence as long as the resolution is rational).

Appellant further questioned Morgan's credibility by suggesting that Morgan, a convicted prostitute, had sexual relations with Wyatt and appellant; however, Morgan denied having such relations with either man. But, even if the jury believed she had such relations, the jury was nonetheless free to believe Morgan's testimony regarding the murders. Further, the jury heard Morgan admit having a criminal history for multiple offenses, admit smoking crack cocaine with appellant and Wyatt a few days before the shootings, admit touching appellant's gun a few days before the shootings, admit drinking and getting high during the evening of February 23, 2011, and admit smoking crack cocaine with Wyatt and appellant immediately prior to the shootings. We must defer to the jury's implied assessment that Morgan was credible despite the above-cited admissions.

---

of murder; however, the charge in the case involving Beverly's death instructed the jury on all three different theories of murder, as alleged in the indictment.

In addition to Morgan's testimony, physical evidence linked appellant to the offenses: (1) officers collected seven spent shell casings, supporting Morgan's testimony that appellant fired seven shots that night[3]; (2) crime scene investigators observed two bullet holes in Beverly's door, which matched the autopsy results indicating that Beverly had been shot twice; (3) DNA evidence (the lack of Morgan's DNA under the fingernails of Wyatt or Beverly) supported Morgan's testimony that appellant shot her and Wyatt without provocation and that there was no physical contact between Morgan, Wyatt, and Beverly; and, (4) the crack pipe recovered in Wyatt's pant pocket as well as the toxicology results corroborated Morgan's testimony that she, Wyatt, and appellant were smoking crack prior to the shootings.

■ Patricia's testimony provided sufficient evidence of appellant's motive for the murders by showing that after their grandmother died, appellant's more frequent drug use caused him to be angry and paranoid, he had issues with Wyatt and threatened to kill him, appellant argued with Beverly, and appellant was upset with the family over the reduction in his inheritance. While motive is not an element of murder, it may provide circumstances indicative of guilt.[4] *See Clayton v. State*, 235 S.W.3d 772, 781 (Tex.Crim.App. 2007).

Finally, appellant's conduct after the shootings provided additional circumstantial evidence in support of the verdicts: (1) he left the house before first responders arrived; (2) he did not call the police and report the shootings; (3) he did not contact his sister; and (4) he not only resisted arrest but threatened to shoot officers if they did not kill him. *See Devoe v. State*, 354 S.W.3d 457, 470 (Tex.Crim.App.2011) (recognizing flight is circumstantial evidence of guilt). And, his possession of the murder weapon at the time of his arrest was highly probative of his guilt.

In summary, the jury heard evidence that appellant deliberately shot Wyatt multiple times causing his death and, in furtherance of shooting Wyatt, appellant shot Beverly twice, causing her death. We therefore hold that the evidence is legally sufficient to support the jury's finding beyond a reasonable doubt that appellant committed murder. *See Aguirre v. State*, 732 S.W.2d 320, 326 (Tex.Crim.App.1987) (opinion on reh'g) (sufficient evidence to support appellant's conviction of murdering his daughter when appellant fired a shotgun into a door to kill his wife but the shotgun pellets hit his daughter, killing her).

We overrule appellant's issue and affirm the trial court's judgments.

**3.** While Morgan did not see Beverly on February 24, 2011, and did not know whether she was in the house at the time, Patricia testified that Beverly lived in the house with appellant, was dropped off at her house around 10:00 p.m. on February 23, and was known to come out of her bedroom when appellant was involved in arguments or disturbances with family members.

**4.** Intent may be inferred from acts, words and conduct of the accused. *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex.Crim.App.1991) (en banc); *Mouton v. State*, 923 S.W.2d 219, 223 (Tex.App.–Houston [14th Dist.] 1996; no pet.). A culpable mental state is almost always proven through circumstantial evidence. *Warren v. State*, 797 S.W.2d 161, 164 (Tex.App.–Houston [14th Dist.] 1990, pet. ref'd). Intent is a fact question and may be inferred from circumstantial evidence. *See Salinas v. State*, 163 S.W.3d 734, 739–40 (Tex.Crim.App. 2005); *Guevara v. State*, 152 S.W.3d 45, 50 (Tex.Crim.App.2004).